STATE OF HAWAII, Plaintiff-Appellee, vs. RAY TACHIBANA, Defendant-Appellant, and MELVIN LEVI, Defendant.

NO. 9135

(CRIMINAL NO. 56310)

MARCH 29, 1985

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

Defendant-Appellant Ray Koichi Tachibana pled guilty to first degree murder and was sentenced to life imprisonment not subject to parole. He now contends the trial court erred in accepting his guilty plea, in refusing to allow him to withdraw the plea, and in

denying him the possibility of parole. We conclude that the trial court did not err in accepting the guilty plea or in refusing to allow its withdrawal, but that the court abused its discretion when imposing sentence.

## I.

Appellant and another man, Melvin Levi, were indicted in October 1981 for the 1969 murder of Gordon Scott. Count I of the indictment charged Levi with first degree murder, Count II charged Appellant with first degree murder, and Count III charged Appellant as an accessory before the fact to Scott's murder.

Appellant successfully moved to sever his trial from that of his co-defendant. Levi was brought to trial first and was found guilty of first degree murder by a jury verdict on September 24, 1982.[1] Soon thereafter, on November 29, 1982, Appellant tendered a plea of guilty to Count II of the indictment. His plea was the result of negotiations with the prosecution for certain concessions regarding bail and sentencing: the prosecution agreed not to seek any increase in Appellant's bail prior to sentencing; not to request the imposition of any particular sentence but to submit on the recommendation of the pre-sentence report; and not to oppose Appellant's motion to be sentenced under the provisions of the Hawaii Penal Code, Hawaii Revised Statutes (HRS) §§ 701-100 *et seq.* (1976). At the change-of-plea hearing on November 29, 1982, the prosecution also agreed not to prosecute Appellant on Count III of the indictment. The court accepted Appellant's guilty plea and referred him for a pre-sentence diagnosis and report.

At the sentencing hearing, the prosecution complied with its agreement by "standing silent." The sentencing judge, however, denied Appellant's motion to be sentenced under the 1973 Penal Code. The court instead sentenced Appellant under the law in effect in 1969 to a life term without any possibility of parole.

On March 3, 1983, Appellant filed a motion to withdraw his

---

[1] Levi appealed his conviction, and this court reversed and remanded for a new trial in *State v. Levi,* 67 Haw. 247, 686 P.2d 9 (1984).

guilty plea, which was subsequently denied by the trial court. Appellant then brought this appeal.

## II.

Appellant contends the trial court erred in accepting his guilty plea. He argues, first, that the court failed to adequately insure that he understood the finality of his plea. The transcript of the change-of-plea hearing does not support his argument. The court questioned Appellant as follows:

THE COURT: Knowing what the maximum penalties are, is it still your intent to plead guilty?

THE DEFENDANT: Yes, I do.

THE COURT: You understand that if you do not like what the Court does in regards to your sentence, you cannot change your mind; it would be too late at that time?

THE DEFENDANT: Yes.

Appellant's contention is without merit.

Appellant also argues that the court failed to ascertain that there was a sufficient factual basis for the plea, as required by Hawaii Rules of Penal Procedure (HRPP) Rule 11(f).[2] Appellant claims that in the course of his plea interrogation, he did not admit to the requisite intent to bring about the death of Gordon Scott and lacking such admission, his plea of guilty cannot stand. Appellant simply ignores the fact that the court is not required to elicit the factual basis for a plea solely from him. Here, the court asked the prosecution to make a representation as to the facts which would be proved at trial, especially facts relevant to a determination of Appellant's intent. No objection was raised by Appellant to the prosecution's representation. Moreover, the court was aware of the testimony and other evidence previously introduced at the trial of Appellant's co-defendant, some of which was relevant to the charges against Appellant. Considering all of the information

---

[2] HRPP Rule 11(f) reads as follows:

Determining Accuracy of Plea. Notwithstanding the acceptance of a plea of guilty, the court shall not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

available to the court, there was a sufficient factual basis for the guilty plea.

### III.

We turn to the question of whether the court erred when it refused to permit Appellant to withdraw the plea after sentencing. HRPP Rule 32(d) allows a defendant to withdraw his plea after sentencing "to correct manifest injustice."[3]

Appellant's argument rests on the central premise that it is "manifestly unjust" to hold him to his bargain with the prosecution when his expectation that the court would concur in the prosecution's sentencing "recommendation" was not fulfilled.

We addressed this issue in *State v. Gumienny*, 58 Haw. 304, 568 P.2d 1194 (1977), in which the question was whether a defendant should have been permitted to withdraw a guilty plea made pursuant to a plea bargain, where the prosecution had fulfilled its part of the bargain by moving for deferred acceptance of the guilty plea but the court denied the motion and accepted the plea. We held that the defendant's unilateral expectation that the motion would be granted did not entitle him to withdraw his plea, in light of conscientious efforts by the court to make the defendant understand that he could not rely on any such expectation and the absence of any showing that the expectation was improperly induced.

As in *Gumienny*, the trial court in this case made conscientious efforts to make Appellant understand that the court was not obliged to accept the prosecution's recommendations, *i.e.*, that despite the prosecution's compliance with the agreement, the court could sentence Appellant to a life term without the possibility of parole. Moreover, there is no evidence or allegation that Appellant's expectation of the court's concurrence was improperly induced by anyone.

---

[3] HRPP Rule 32(d) reads as follows:

Withdrawal of Plea of Guilty. A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence shall set aside the judgment of conviction and permit the defendant to withdraw his plea.

In keeping with the views we expressed in *Gumienny*, we hold that the trial court's failure to act in accordance with Appellant's unilateral expectations, however reasonable those expectations may be, does not give rise to any manifest injustice within the meaning of Rule 32(d). Therefore the trial court did not err in refusing to allow Appellant to withdraw his plea.

## IV.

Finally, Appellant challenges the trial court's decision to impose a sentence of life imprisonment not subject to parole.

The Hawaii Penal Code, HRS §§ 701-100 *et seq.* (1976), became effective on January 1, 1973. Section 701-101(1) of the Code provides that it "does not apply to offenses committed before its effective date. Prosecutions for offenses committed before the effective date are governed by the prior law, which is continued in effect for that purpose, as if this Code were not in force." Therefore, Appellant was properly charged under the pre-Code law, HRS § 748-1 (1968).[4]

The Code also provides, however, that "[i]n any case pending on or commenced after the effective date of this Code, involving an offense committed before that date . . . [u]pon the request of the defendant and the approval of the court . . . [t]he court may impose a sentence or suspend imposition of a sentence under the provisions of this Code applicable to the offense and the offender." HRS § 701-101(2) (1976). In other words, the Code's sentencing provisions may be applied in cases otherwise governed by pre-Code law.

The Code brought about a significant change in the sentence for murder. Under pre-Code law, a conviction for first degree murder carried a penalty of life imprisonment not subject to

---

[4] HRS § 748-1 (1968) read as follows:

Murder, first degree. Murder in the first degree is the killing of any human being without authority, justification, or extenuation by law done:
(1) With deliberate premeditated malice aforethought; or
(2) With malice aforethought and with extreme atrocity or cruelty; or
(3) In the commission of or attempt to commit or the flight from the commission of or attempt to commit arson, rape, robbery, burglary, or kidnapping.

parole.[5] Under the Code, however, the sentence for murder is life imprisonment with the possibility of parole except in four specific types of cases, including murder for hire, in which a life term without the possibility of parole is mandated.[6] Therefore, Appellant was certain to receive a life term not subject to parole if he was sentenced under pre-Code law, but if the court acceded to his request to be sentenced under the provisions of the Code, he would receive a life term with the possibility of parole unless his case fell within one of the four exceptions.

At the sentencing hearing, Appellant made a timely request that the court sentence him under the Code provisions. The court proceeded to state on the record the various factors which it felt to be pertinent to its decision on Appellant's request. The court first noted the testimony of the several witnesses at the sentencing hearing who gave their opinions of Appellant's character and stated their views that Appellant was not a threat to the community, possessed many positive attributes, and therefore deserved to be considered for parole. The court also noted Appellant's distinguished

---

[5] The pertinent portion of HRS § 748-4 (1968) read as follows:

Penalties. Whoever is guilty of murder in the first degree shall be punished by imprisonment at hard labor for life not subject to parole.

[6] HRS § 706-606 (1976 & Supp. 1984) reads as follows:

Sentence for offense of murder. The court shall sentence a person who has been convicted of murder to an indeterminate term of imprisonment. In such cases the court shall impose the maximum length of imprisonment as follows:
   (a) Life imprisonment without possibility of parole in the murder of:
      (i) A peace officer while in the performance of his duties, or
      (ii) A person known by the defendant to be a witness in a murder prosecution, or
      (iii) A person by a hired killer, in which event both the person hired and the person responsible for hiring the killer shall be punished under this subsection, or
      (iv) A person while the defendant was imprisoned.
     As part of such sentence the court shall order the director of the department of social services and housing and the Hawaii paroling authority to prepare an application for the governor to commute the sentence to life with parole at the end of twenty years of imprisonment.
   (b) Life imprisonment with possibility of parole in all other cases. The minimum length of imprisonment shall be determined by the Hawaii paroling authority in accordance with section 706-669.

career as a dentist, his background of community service, his lack of other criminal convictions, and his age and medical condition, all of which tended to support his request for leniency in sentencing. The court then proceeded to give two reasons why it felt Appellant should be sentenced under pre-Code law. First, the court made a "finding" that Appellant had hired his co-defendant to kill Gordon Scott. Inasmuch as the Penal Code mandates a life term without possibility of parole in cases of murder for hire, the court con-·cluded that the penalty applicable to Appellant under the Penal Code is the same as the applicable penalty under pre-Code law: in both cases the possibility of parole is denied. The second reason given by the court for sentencing Appellant under pre-Code law is that Appellant's co-defendant had already been sentenced to life imprisonment not subject to parole, and "[a]s a matter of justice and as an example to others, this Court believes that a person who persuades and induces another to commit a murder should receive the penalty no smaller than the penalty imposed on the person who commits the murder." On this basis the court then sentenced Appellant under pre-Code law to life imprisonment not subject to parole. Both of the court's stated reasons for sentencing Appellant under pre-Code law are based on the court's finding that this was a murder for hire. The issue is whether the court was entitled to make such a finding.

"Murder for hire" was not identified as a discrete offense under pre-Code law; rather, a person who hired someone to kill another was criminally liable for the murder by virtue of HRS § 704-3 and § 704-4 (1968) which establish the definition and liability of an accessory before the fact.[7] Appellant was charged under these pro-

---

[7] HRS § 704-3 (1968) read as follows:

Accessory before fact. Any person who, not himself being present at the commission of an offense, abets another in the commission thereof, or procures, counsels, incites, commands, or hires another to commit the same, which the other thereupon, in pursuance thereof, commits, is an accessory before the fact, to the commission of the offense.

HRS § 704-4 (1968) read as follows:

Indictment, trial, and punishment. Every person who aids in the commission of an offense, or is accessory before the fact thereto, is guilty of the offense, and shall be subject to indictment, trial, and punishment therefor, in the same manner and to the same effect as if he had been present at the commission thereof and actually taken part therein.

visions in Count III of the indictment. Appellant did not, however, plead guilty to Count III. He pled only to Count II which charged him as a principal in the murder. His admission of guilt to Count II can in no way be construed as an admission of murder for hire, and at no time in the course of these proceedings has Appellant ever admitted to hiring Levi to kill Gordon Scott. In fact, the pre-sentence report contains a statement by Appellant in which he explicitly denied having any monetary agreement with Levi prior to the killing. There was evidence that Appellant made several monetary payments to Levi after the killing, but Appellant indicated that Levi extorted these payments from him under threat of exposure of their crime. The evidence that this was a murder for hire must be characterized as ambiguous at best.

In *State v. Apao*, 59 Haw. 625, 586 P.2d 250 (1978), we considered the question of whether it was error to include in an indictment for murder the allegation that the victim was known by the person being indicted to be a witness in a murder prosecution. The fact that the victim was a witness in a murder prosecution was not an essential element of the crime of murder, but it is an aggravating circumstance—like murder for hire—which gives rise to enhanced sentencing provisions under HRS § 706-606. We decided that "the better rule is to include in the indictment the allegations, which if proved, would result in application of a statute enhancing the penalty for the crime committed." *Id.* at 636, 586 P.2d at 258. We observed that,

> [w]here a factor aggravates an offense and causes the defendant to be subject to a greater punishment than would otherwise be imposed, due process requires that the issue of whether that factor is present, must be presented to the jury upon proper allegations and a verdict thereon rendered before the court can impose the harsher penalty.

*Id.* at 635, 586 P.2d at 258 (quoting *State v. Frazier*, 81 Wash. 2d 628, 633, 503 P.2d 1073, 1077 (1972)).

By "finding" that Appellant had in fact hired Levi to commit the killing, thus concluding that the enhancing provisions of HRS § 706-606(a) were applicable, the trial court adjudicated this disputed issue without the benefit of so much as an evidentiary hearing. Therefore, the court's imposition of the pre-Code penalty was an abuse of discretion at the least, if not a violation of Appellant's

due process rights.

Accordingly, Appellant's sentence is vacated and the case is remanded to the circuit court for resentencing consistent with this opinion.

*Pamela J. Berman* for defendant-appellant.

*Lynn L. Hodgson,* Deputy Prosecuting Attorney, for plaintiff-appellee.