**STATE OF HAWAII**, Plaintiff–Appellee, v. **JUAN GUZON VALERA**, Defendant–Appellant

NO. 15773

(CR. NO. 90–093)

MARCH 24, 1993

LUM, C.J., MOON, KLEIN, LEVINSON, JJ.,
AND RETIRED JUSTICE HAYASHI,*
ASSIGNED BY REASON OF VACANCY

---

*Retired Justice Yoshimi Hayashi, who heard oral argument in this case, was unavailable for signature when this opinion was filed. *See* HRS § 602–10 (1985).

## OPINION OF THE COURT BY LUM, C.J.

Defendant–appellant Juan Guzon Valera (Valera) was found guilty by a jury of two counts of manslaughter, in violation of Hawaii Revised Statutes (HRS) § 707–702

(1985) and the offenses of permit to acquire, in violation of HRS § 134–3 (1985) and license to carry a firearm, in violation of HRS § 134–9 (1985). On appeal, Valera does not contest his convictions; rather, he argues that the sentencing judge improperly considered and relied upon his suppressed statements when determining his sentence. We conclude it was error for the sentencing judge to have relied on statements obtained in violation of Valera's constitutional right against self–incrimination when determining Valera's sentence. We therefore vacate Valera's sentence and remand for resentencing.

## I.

On the night of March 24, 1990, Valera shot and killed his wife, Arcelie Valera and her alleged lover, Carlito Fernandez. Valera was arrested that night by Hawaii County Police Officer Kamakawiwoole (Kamakawiwoole). Valera, however, received inadequate *Miranda* warnings.[1]

While in a holding cell awaiting processing, Valera stated that he had shot his wife and her lover. Kamakawiwoole asked Valera, "What happened?" In response, Valera recounted the sequence of events leading up to the killings.[2] Valera was also asked where he

---

[1] Kamakawiwoole informed Valera that "he had the right to remain silent; that anything he say [sic] may be used against him in a court of law; and that he had the right to have an attorney if he wished a — a — he needed one." According to the circuit court, the *Miranda* warnings, as given, were constitutionally inadequate because they did not convey to Valera the full panoply of his rights, i.e., Valera was not told that if he could not afford an attorney one would be appointed for him.

[2] The substance of Valera's response is as follows: Valera suspected his wife of "fooling around." On the night of the killings, Valera drove to the Mauna Kea Beach Hotel, where his wife worked, and followed her

had obtained the gun and replied that he had gotten the gun from a person in Kawaihae.

Valera was initially charged with murder in the first degree for the killings, acquiring a firearm without a permit, and carrying a firearm without a license.[3] On May 1, 1990, the State moved to determine the voluntariness of several statements Valera made to various people and to the police on the night of the killings. The statements include Valera's March 24, 1990 declaration that he had just shot his wife and her lover. Valera moved to suppress all of his statements, claiming that they were obtained in violation of his privilege against self–incrimination and his right to counsel as guaranteed by article I, sections 10 and 14 of the Hawaii Constitution, respectively.

The circuit court granted Valera's motion to suppress the statements he had made in response to

---

after she finished her shift that evening. His wife eventually parked her car at the Honokaa Sports Complex next to another car. Valera waited a while before approaching the other two vehicles, because if his wife and her alleged lover were going to make love, he wanted to catch them in the act.

Valera then drove his car up behind the other two vehicles and parked it so that neither of the other vehicles could drive away. He went up to the passenger side door of one of the vehicles, looked inside and discovered a man in the vehicle with his pants undone. Valera proceeded to fire gunshots into the car. He then chased his wife, who had fled from the car, and shot her while she was fleeing and again when he caught up with her.

Valera then went after the man (who was later identified as Carlito Fernandez) who was heading towards the Honokaa Club. Valera followed Fernandez into the club and shot and killed him.

[3] On August 27, 1991, after this court affirmed the circuit court's decision to suppress Valera's statements, the State amended counts I and II of its complaint from Murder in the First Degree to Murder in the Second Degree.

Kamakawiwoole's question, "What happened?" and his statements regarding where he had obtained the gun used in the killings. The circuit court specifically determined that these statements were the product of custodial interrogation in which Valera had been given inadequate *Miranda* warnings and that Valera had not voluntarily, knowingly, and intelligently waived his rights to silence and to counsel under article I, sections 10 and 14 of the Hawaii Constitution.[4]

The circuit court ruled Valera's suppressed statements could not be introduced at trial, in any manner, by the State. We affirmed the circuit court's ruling in *State v. Valera*, No. 14702 (Haw. April 30, 1991) (mem.).

Valera was found guilty, after a jury trial, of two counts of manslaughter (Counts I and II) and of the other offenses as charged. The State subsequently filed three motions regarding sentencing: (1) a Motion for Extended Term Sentencing, pursuant to HRS § 706–661 (1985); (2) a Motion for Mandatory Minimum Sentencing, pursuant to HRS § 706–660.1 (Supp. 1991); and (3) a Motion to Impose Consecutive Sentencing, pursuant to HRS § 706–668.5 (Supp. 1992).

At the sentencing hearing, defense counsel objected to a reference made to Valera's suppressed statements in the pre–sentence investigation report and requested that the reference be stricken.

The sentencing judge, by implication, overruled defense counsel's objection and implicitly denied the defense's motion to strike, stating:

---

[4] The circuit court, therefore, granted in part and denied in part the State's motion to determine voluntariness. Specifically, the circuit court determined that all of Valera's incriminating statements, except for those made in response to Kamakawiwoole's questions at the Honokaa police station, were admissible against him at trial.

As far as this matter goes, there are [sic] certain evidence, which the jury could not hear but which is in the minds of all those who sat through the trial including defense counsel and prosecutor, I cannot dismiss from my mind. I think it is clear from Mr. Valera's statement is they [sic] went to Mauna Kea Beach Hotel, followed his wife from the Beach Hotel all the way to Honokaa. Although it's not explicit in the statement, I think it's implicit that he had this illegally obtained .357 Magnum in his car.

When he saw his wife meet with Mr. Fernandez, he then approached the vehicle[s] with his vehicle, parked behind his [sic] vehicle, went out with his weapon, and shot Mrs. Valera as she fled the car. Then he chased Mr. Fernandez down to Honokaa club, quite a distance of about three football lengths, I believe it was, the testimony, and finished him off at the Honokaa Club.

I think if the jury had heard the evidence which had to be barred because of the way the police questioned Mr. Valera, a different result would have occurred. I think in sentencing, the Court can consider that [sic] those items which had to be barred. I think in this case, Mr. Valera acted as an executioner. He stalked his victim [sic] and shot them one after the other.

The sentencing judge also denied the State's motions for extended term and mandatory minimum term sentencing, but granted its motion for consecutive sentences with respect to Valera's manslaughter convictions. Valera was sentenced to serve: (a) two ten–year consecutive terms of imprisonment for Counts I and II; (b) a five–year concurrent term of imprisonment for Count III; and

(c) a one–year concurrent term of imprisonment for Count IV. Judgment was entered and this appeal followed.

## II.

Valera argues on appeal that the sentencing judge[5] violated his constitutional rights to due process and to counsel, and his privilege against self–incrimination as guaranteed by article I, sections 5, 14 and 10 of the Hawaii Constitution,[6] by relying almost exclusively upon his suppressed statements in determining his sentence.[7] Valera, therefore, asks this court to extend the *Santiago* rule prohibiting the use of illegally obtained confessions as evidence at trial to the sentencing phase of criminal proceedings.

The State counters that the exclusionary rule should not apply at sentencing proceedings; however, should this

---

[5] In the Hawaii circuit courts, the sentencing judge is generally also the trial judge, as was the case here.

[6] Article I, section 5 of the Hawaii Constitution provides in pertinent part: "No person shall be deprived of life, liberty or property without due process of law . . . ." HAW. CONST. art. I, § 5 (1978).

Article I, section 14 of the Hawaii Constitution states in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for the accused's defense." HAW. CONST. art. I, § 14 (1978).

Article I, section 10 of the Hawaii Constitution provides in relevant part:

No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury or upon a finding of probable cause after a preliminary hearing held as provided by law, . . . *nor shall any person be compelled in any criminal case to be a witness against oneself.*

HAW. CONST. art. I, § 10 (1978) (emphasis added).

[7] Because we decide this appeal on other grounds, we do not address Valera's right to counsel argument.

court determine that the rule does apply, any error by the sentencing judge in considering Valera's suppressed statements was harmless, because most of the substantive content of Valera's statements was elicited during trial either through testimony or physical evidence. Thus, the State argues, Valera's sentence was supported by the totality of the trial evidence.

The dispositive issue we must decide is whether a sentencing judge may take into consideration and rely upon statements obtained in violation of a defendant's privilege against self–incrimination, as guaranteed by article I, section 10 of the Hawaii Constitution, when determining the sentence to be imposed on that defendant. For the reasons stated below, we hold that a sentencing judge may not.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that the prosecution could not use a defendant's statements obtained through custodial interrogation against that defendant in a criminal prosecution unless the prosecution could demonstrate that procedural safeguards were used to inform the defendant of his constitutional rights. *Id.* at 478–79. These safeguards, more commonly known today as the "*Miranda* warnings," were required to protect a defendant's federal fifth amendment privilege against self–incrimination. *Id.*

The United States Supreme Court further held that the *Miranda* warnings were an absolute constitutional prerequisite to admitting a defendant's statement, whether exculpatory or inculpatory, into evidence at trial. *Id.* at 476 ("the warnings required . . . are prerequisites to the admissibility of any statement made by a defendant."). "This [bright line rule was required] because without the right to cut off police questioning, the inherently compelling pressures of in–custody interrogation operate to over

bear [sic] free choice, the foundation of the privilege, and statements elicited after its invocation cannot be other than the product of compulsion." *State v. Uganiza*, 68 Haw. 28, 30–31, 702 P.2d 1352, 1354 (1985) (citing *Miranda*, 384 U.S. at 474).

Hawaii has adopted this "bright line rule." *See id.*; *State v. Kaahanui*, 69 Haw. 473, 477–78, 747 P.2d 1276, 1279 (1987); *State v. Russo*, 67 Haw. 126, 132–33, 681 P.2d 553, 559 (1984), *appeal after remand*, 69 Haw. 72, 734 P.2d 156 (1987). Additionally this court has held that the *Miranda* warnings have an independent source in the Hawaii Constitution's privilege against self–incrimination. *See State v. Santiago*, 53 Haw. 254, 266, 492 P.2d 657, 664 (1971), *appeal after remand*, 55 Haw. 162, 516 P.2d 1256 (1973). In fact, we have consistently provided criminal defendants with greater protection under Hawaii's version of the privilege against self–incrimination (article I, section 10 of the Hawaii Constitution) than is otherwise ensured by the federal courts under *Miranda* and its progeny. *See, e.g.*, *Santiago*, 53 Haw. at 265, 492 P.2d at 664; *State v. Russo*, 67 Haw. at 132, 681 P.2d at 558; *State v. Nelson*, 69 Haw. 461, 468, 748 P.2d 365, 369 (1987).

For example, in *Harris v. New York*, 401 U.S. 222 (1971), the United States Supreme Court held that a statement obtained in violation of a criminal defendant's *Miranda* rights could be used by the prosecution to impeach that defendant's trial testimony, even though such statements could not be used by the prosecution in its case in chief. *Id.* at 224–26. Significantly, this court declined to follow this interpretation of the privilege against self–incrimination under the Hawaii Constitution, holding instead that "unless [the *Miranda* warnings

are given], statements made by the accused may not be used either as direct evidence in the prosecutor's case in chief or to impeach the defendant's credibility during rebuttal or cross–examination." *Santiago*, 53 Haw. at 266, 492 P.2d at 664.

In *Santiago*, we also recognized that society has a valid policy of convicting and punishing persons convicted of criminal offenses. *Id.* However, when we prohibited the use of a defendant's constitutionally infirm statements against him, even for impeachment purposes, we in effect recognized that every accused has the right to be informed of his freedom to choose whether to incriminate himself. *Id.* at 267, 492 P.2d at 665. This court stated the policy that a defendant's privilege against self–incrimination "must be maintained, even though it necessitates that a certain number of criminals must go free in order to pre- serve the rights of all persons accused of crimes." *Id.* Valera now asks this court to extend the *Santiago* rule to the sentencing stage of the criminal process.

We note first that the sentencing phase is considered a critical stage of the criminal process. *See Gardner v. Florida*, 430 U.S. 349, 358 (1977). A sentencing judge generally has "broad discretion in imposing a sentence," *State v. Nunes*, 72 Haw. 521, 524, 824 P.2d 837, 840 (1992), and the sentence thus imposed should be tailored to the particular circumstances of a defendant's case. *State v. Nobriga*, 56 Haw. 75, 83, 527 P.2d 1269, 1274 (1974) (citation omitted). To achieve this end, there is a legitimate need to provide a sentencing judge with complete information about the defendant. *Id.*; *see also State v. Murphy*, 59 Haw. 1, 21, 575 P.2d 448, 461 (1978). Indeed, a sentencing judge is required to consider spe- cific statutory factors in determining the sentence to be

imposed. *See* HRS § 706–606 (Supp. 1992).[8] Therefore, the scope of a sentencing judge's inquiry into a defendant's background is very broad and limitations on the kind and/or source of information the court may consider are not lightly imposed. *Verdugo v. United States*, 402 F.2d 599, 611 (9th Cir. 1968), *cert. denied*, 397 U.S. 925 (1970), *and cert. denied*, 402 U.S. 961 (1971). *See also Murphy*, 59 Haw. at 21, 575 P.2d at 461.

This is not to say, however, that a sentencing judge's discretion is without limits. A sentencing judge is still required to impose a "fair, proper, and just sentence," *Nobriga*, 56 Haw. at 77, 527 P.2d at 1271 (citation omitted), based upon the crime of which the defendant was convicted. The conviction, in turn, is predicated upon the evidence presented at trial. Thus, because suppressed statements are by definition not admitted at trial, it would

---

[8] These factors are:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed:

    (a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (b) To afford adequate deterrence to criminal conduct;

    (c) To protect the public from further crimes of the defendant; and

    (d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available; and

(4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

HRS § 706–606 (Supp. 1992).

be anomalous to allow a sentencing judge to take them into consideration when imposing sentence.

While a defendant is not entitled to the full panoply of due process protections at sentencing, *State v. Ortez*, 60 Haw. 107, 120, 588 P.2d 898, 907 (1978), a defendant is entitled at the very least to the minimal procedural protections afforded by the due process clause. *Id.* Here the sentencing judge's use of Valera's suppressed statements at the sentencing hearing violated Valera's right to due process.

Our review of the record reveals that the sentencing judge made it clear that he considered and relied upon Valera's suppressed statements in determining Valera's sentence by stating: 1) he could not dismiss the suppressed evidence from his mind; 2) he believed that if the jury had heard the evidence it would have convicted Valera of murder, rather than manslaughter; and 3) he possessed the authority to consider the suppressed evidence in determining the sentence to be imposed.

The State argues, however, that even if the sentencing judge committed error in considering Valera's suppressed statements, the error was harmless because most of the information contained in Valera's statements was established either by testimonial or physical evidence at trial. The State, however, failed to make the trial transcripts part of the record on appeal and, consequently, we decline to address this argument.

In light of the views and policies we expressed in *Santiago* and our discussion of the countervailing policies at issue, we firmly believe that information contained in a defendant's suppressed statements, which were not considered at trial by the jury when reaching a verdict, should be strictly prohibited from use by a sentencing judge when

considering and formulating that defendant's sentence. Accordingly, we extend *Santiago* to the sentencing phase of criminal proceedings and hold that the use at sentencing of statements previously obtained in violation of a defendant's privilege against self–incrimination violates that defendant's privilege against self–incrimination and right to due process, as guaranteed by the Hawaii Constitution. This holding is consistent with federal law. *See, e.g.*, ***Estelle v. Smith***, 451 U.S. 454, 469 (1981) (statements obtained in violation of a defendant's fifth amendment rights may not be used against that defendant, even at the penalty phase of the proceedings); ***Pens v. Bail***, 902 F.2d 1464, 1466 (9th Cir. 1990) (unwarned statements about other offenses cannot be used to enhance sentence); ***Jones v. Cardwell***, 686 F.2d 754, 756 (9th Cir. 1982) ("a sentencing judge's broad discretion to consider information in imposing sentence does not extend to consideration of information obtained in violation of a defendant's privilege against self–incrimination."); ***United States ex rel. Brown v. Rundle***, 417 F.2d 282, 284 (3d Cir. 1969) (due process is violated when sentencing court considers inadmissible evidence); ***United States ex rel. Rivers v. Myers***, 384 F.2d 737, 743 (3d Cir. 1967) (inadmissible written confession cannot be used to determine degree of murder).

## III.

Valera also argues that the sentencing judge punished him for the commission of criminal offenses, murders in the second degree, of which he was acquitted. Valera argues that imposition of two ten–year consecutive terms of imprisonment for the manslaughter convic-

tions was essentially a finding, contrary to the jury verdict, that Valera acted intentionally and knowingly and was not suffering extreme emotional disturbance.[9]

In support of his argument, Valera points to particular language employed by the judge at the sentencing hearing which characterized him as "an executioner" who "stalked his victim [sic] and shot them one after the other." The judge, as noted, also expressed his belief that "if the jury had heard the evidence which had to be barred . . . a different result would have occurred." The State argues that Valera's sentence is "well within statutory guidelines" and therefore any error was harmless.

The authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent abuse of discretion or unless applicable statutory or constitutional commands have not been observed. *State v. Murray*, 63 Haw. 12, 25, 621 P.2d 334, 342 (1980). We must ignore errors which do not affect substantial rights. Rule 52(a), Hawaii Rules of Penal Procedure.

In *State v. Tachibana*, 67 Haw. 573, 698 P.2d 287 (1985), this court held that a trial court could not enhance

---

[9] Pursuant to HRS § 707–702, the offense of murder can be reduced to the offense of manslaughter under certain circumstances. Specifically, HRS § 707–702(2) (Supp. 1992) provides:

> In a prosecution for murder in the first and second degrees it is a defense which reduces the offense to manslaughter, that the defendant was, at the time he caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.

a defendant's sentence based on an aggravating factor not established by the evidence. *Id.* at 580, 698 P.2d at 293. More recently, in *State v. Nunes*, 72 Haw. 521, 824 P.2d 837 (1992), we held that a judge cannot punish a defendant for an uncharged crime in the belief that it too deserves punishment. An adjudication of guilt is required before a sentence may be imposed. *See, e.g.*, Hawaii Rules of Penal Procedure Rule 32(a).

In this case, the sentences imposed were within the statutory guidelines. However, based on this sentencing judge's statements, a strong inference arises that he improperly relied on Valera's suppressed statements in determining Valera's sentence. Thus, despite the fact that Valera's sentence falls within the range prescribed by statute, we cannot say that a judge considering the offenses of which Valera stands convicted and not considering inadmissible evidence would impose the sentences imposed here. Consequently, we cannot find the sentencing judge's statements to the effect that "if the jury had heard the evidence which had to be barred . . . a different result would have occurred" and that "in sentencing, the Court can consider . . . those items that had to be barred" were harmless beyond a reasonable doubt.

## IV.

Based on the foregoing, we vacate Valera's sentences, including the concurrent sentences imposed for his two firearm convictions, and remand this case to the Third Circuit Court for re–sentencing by a different judge. On remand and prior to re–sentencing, the reference

to Valera's suppressed statements in the pre–sentence investigation report shall be stricken from said report.

*Joyce K. Matsumori–Hoshijo,* Deputy Public Defender, for defendant–appellant.

*Donald S. Davidson*, Deputy Prosecuting Attorney, for plaintiff–appellee.