119 P.3d 597

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Richard GONSALVES, Defendant–Appellant.**

No. 27078.

Supreme Court of Hawai'i.

Sept. 9, 2005.

MOON, C.J., LEVINSON, and NAKAYAMA, JJ.; and ACOBA, J., concurring separately, with whom DUFFY, J., joins.

Opinion of the Court by LEVINSON, J.

The defendant-appellant Richard Gonsalves appeals from the judgment of the circuit court of the first circuit, the Honorable Virginia L. Crandall presiding, convicting him of and sentencing him for the offense of promoting a dangerous drug in the second degree, in violation of Hawai'i Revised Statutes (HRS) § 712–1242(1)(c) (1993 & Supp. 2003).[1] On appeal, Gonsalves argues that the circuit court erred (1) by excusing the jury for the day rather than receiving the jury's non-verdict following the jury's communication to the court, which stated that it was "unable to reach a unanimous decision" and (2) by sentencing him as a repeat offender to a mandatory minimum term of imprisonment of three years and four months "without submitting the issue of whether [he] qualifies as [a] repeat offender to a jury" to be proven beyond a reasonable doubt, in contravention of the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

## I. BACKGROUND

On January 5, 2004, Gonsalves was charged by complaint with promoting a dangerous drug in the second degree, in violation of HRS § 712–1242(1)(c), *see supra* note 1.

Clifford B. Hunt, Honolulu, on the briefs, for defendant-appellant Richard Gonsalves.

Daniel H. Shimizu, deputy prosecuting attorney, on the briefs, for the plaintiff-appellee State of Hawai'i.

1. HRS § 712–1242 provided in relevant part:

 (1) A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly:

 . . . .

 (c) Distributes any dangerous drug in any amount.

 (3) Notwithstanding any law to the contrary, except for first-time offenders sentenced under section 706–622.5, if the commission of the offense of promoting a dangerous drug in the second degree under this section involved the possession or distribution of methamphetamine, or any of its salts, isomers, and salts of isomers, the person shall be sentenced to an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment, the length of which shall not be less than six months and not greater than five years, at the discretion of the sentencing court. The person convicted shall not be eligible for parole during the mandatory period of imprisonment.

 Effective July 1, 2004, the legislature amended HRS § 712–1242 by, *inter alia*, deleting subsection (3). *See* 2004 Haw. Sess. L. Act 44, § 6 at 211.

The circuit court conducted a jury trial that commenced on September 29, 2004 and concluded on October 8, 2004.

At 1:15 p.m. on October 6, 2004, during the first day of jury deliberations, the jury foreperson sent communication No. 3 to the circuit court. The communication read, "What is the procedure for returning a non-verdict?" The circuit court responded, "You may advise the court by written communication if you are not able to reach a verdict." At 2:00 p.m. that same day, the jury sent communication No. 4, which stated, "We are unable to reach a unanimous decision." The circuit court responded, "You are excused for today. Return tomorrow at 9:00 a.m." Gonsalves objected to the circuit court's responses to the jury's communication No. 4 as follows:

> [DEFENSE COUNSEL]: Defense objection was that they should be allowed— because they indicated that they were unable to reach a unanimous decision, the court should have reconvened and taken their decision. I also informed the clerk of the court that reserving my objection to the court sending them home for the day, I proposed an alternative instruction to the jury or response to the jury[,] which was, "Would additional time deliberating assist you in your deliberations?"
>
> And I believe then over that objection, the court sent them home. Again, . . . they

should have been asked would additional time assist them before they were sent home because if they responded that no, additional time would not assist them, then the court should have reconvened and taken their decision.

The jury did not deliberate on October 7, 2004. At 9:30 a.m. on October 8, 2004, the jury sent communication No. 5, which stated, "We are submitting a non-verdict." The circuit court responded, "Would additional time deliberating assist you in your deliberations?" At 2:10 p.m., the jury sent communication No. 6, which stated, "Can you elaborate or explain in layman's terms element # 2 on page 25 of the instructions." The circuit court responded, "Words are to be given their common and ordinary meaning." At 2:58 p.m. that same day, the jury announced that it had reached a unanimous verdict. The jury found Gonsalves guilty as charged of promoting a dangerous drug in the second degree.

On December 1, 2004, the State of Hawai'i [hereinafter, "the prosecution"] filed a motion for consecutive term sentencing, which sought to revoke Gonsalves's probation with respect to prior convictions in Cr. Nos. 00–1–0406, 99–0200, and 98–2519 and resentence him to terms of imprisonment that would run consecutively to the term of imprisonment imposed in Cr. No. 04–1–0004.[2] That same

2. The prosecution, in its memorandum in support of its motions for consecutive and repeat offender sentencing, stated:

> The Supreme Court of Hawai['])i recently addressed the *Apprendi/Blakely* issue by examining extended term sentencing versus consecutive sentencing. In *State v. Rivera*, [106 Hawai'i 146, 102 P.3d 1044 (2004),] the court found that an extended term of imprisonment may be properly imposed without additional jury findings, as long as the extended term does not exceed that of an applicable consecutive term.
>
> Had the circuit court sentenced Rivera to consecutive terms of imprisonment in Counts I and II, the effect would have been a ten-year indeterminate maximum term of imprisonment, a term *equal* to the two *concurrent* ten-year extended terms of imprisonment that the circuit court actually imposed in this case. . . . It defies logic that the circuit court could, consistent with *Blakely*, legitimately impose the same ten-year sentence, comprised of two consecutive five-year inde-

terminate maximum terms, under ordinary sentencing principles, but run afoul of *Blakely* by imposing concurrent ten-year extended terms of imprisonment based on the finding of prior or multiple concurrent convictions. [106 Hawai'i at 164, 102 P.3d at 1062 (emphases in original).]

The foregoing statement by the prosecution is false. *Rivera* held that Hawaii's extended term sentencing scheme does not contravene *Blakely*. Nevertheless, *Rivera* in no way stands for the proposition that an extended term of imprisonment may be imposed "as long as it does not exceed that of an applicable consecutive term." Moreover, the prosecution seems to ignore the possibility that an extended term of imprisonment may, in some cases, be imposed in connection with a single count and consecutive terms can *only* be invoked if "multiple terms of imprisonment are imposed on a defendant at the same time[.]" HRS § 706–668.5 (1993). To clarify, the *Rivera* majority discussed the relationship between HRS §§ 706–668.5 and 706–662, the extended term sentencing statute, in order to

day, the prosecution also filed a motion for sentencing of a repeat offender to a mandatory minimum term of imprisonment of three years and four months, pursuant to HRS § 706–606.5(1)(a)(iii) (1993 & Supp.2004).[3]

On December 17, 2004, Gonsalves filed a memorandum in opposition to the prosecution's motions for consecutive and repeat offender sentencing, arguing that both the "imposition of a consecutive sentence" and "a mandatory minimum sentence upon [him] pursuant to the repeat offender statute without a finding by a jury that would support a consecutive sentence violates [his] Sixth Amendment right to a jury trial and Fourteenth Amendment right to due process under *Apprendi v. New Jersey* and *Blakely v. Washington.*"

On January 13, 2005, the circuit court conducted a sentencing hearing and a hearing on the prosecution's motions for (1) repeat offender sentencing, (2) consecutive term sentencing, and (3) revocation of probation and resentencing, and (4) sentencing together with Cr. Nos. 98–2519, 99–0200, and 00–1–0406. At the hearing, the circuit court took judicial notice of the records and files in Cr. Nos. 98–2519, 99–0200, and 00–1–0406. The circuit court noted that Gonsalves was on probation in Cr. Nos. 98–2519, 99–0200, and 00–1–0406 at the time of his conviction of promoting a dangerous drug in the second degree in Cr. No. 04–1–0004, such that, pursuant to HRS § 706–625 (Supp.2003),[4] the court was required to revoke his probation in the foregoing three criminal numbers for his conviction of a felony. Gonsalves argued against the imposition of consecutive terms

and sentencing as a repeat offender on the basis that both contravened the holdings in *Apprendi* and *Blakely.*

The circuit court granted the prosecution's motion to sentence Gonsalves as a repeat offender and denied the prosecution's motion for consecutive term sentencing. The circuit court resentenced Gonsalves to five-year indeterminate maximum terms of imprisonment in Cr. Nos. 98–2519, 99–200, and 00–1–406. In Cr. No. 04–1–0004, the circuit court sentenced Gonsalves to a ten-year indeterminate maximum term of imprisonment subject to concurrent mandatory minimum terms of (1) three years and four months as a repeat offender pursuant to HRS § 706–606.5, *see supra* note 3, and (2) two years and six months based on the involvement of the substance methamphetamine pursuant to HRS § 712–1242(3), *see supra* note 1. The circuit court ordered all sentences to run concurrently with one another.

On January 21, 2005, Gonsalves timely filed a notice of appeal.

## II. STANDARDS OF REVIEW

### A. Jury Instructions And Responses To Jury Communications

■ " 'When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading.' " *State v. Kinnane,* 79 Hawai'i 46, 49, 897 P.2d 973, 976 (1995) (quoting *State v. Kelekolio,* 74

"underscore our point," *Rivera,* 106 Hawai'i at 163, 102 P.3d at 1061, that judges have a broad range of discretion in sentencing matters, including imposing consecutive sentences under certain circumstances when it may be "necessary for the protection of the public."

3. HRS § 706–606.5 provides in relevant part:

(1) Notwithstanding section 706–669 and any other law to the contrary, any person convicted of murder in the second degree, any class A felony [or] any class B felony … and who has a prior conviction or prior convictions for the following felonies, including an attempt to commit the same: murder, murder in the first or second degree, a class A felony, a class B felony, or any felony conviction of another

jurisdiction shall be sentenced to a mandatory minimum period of imprisonment without possibility of parole during such period as follows:
 (a) One prior felony conviction:
 . . . .
 (iii) Where the instant conviction is for a class B felony—three years, four months[.]

4. HRS § 706–625(3) provides:

(3) The court shall revoke probation if the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of the order or has been convicted of a felony. The court may revoke the suspension of sentence or probation if the defendant has been convicted of another crime other than a felony.

Haw. 479, 514–15, 849 P.2d 58, 74 (1993) (citations omitted)).... *See also State v. Hoey,* 77 Hawai'i 17, 38, 881 P.2d 504, 525 (1994).

" '[E]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.' " *State v. Pinero,* 70 Haw. 509, 527, 778 P.2d 704, 716 (1989) ... (quoting *Turner v. Willis,* 59 Haw. 319, 326, 582 P.2d 710, 715 (1978)).

> [E]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction.

*State v. Heard,* 64 Haw. 193, 194, 638 P.2d 307, 308 (1981) (citations omitted). If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside. *See Yates v. Evatt,* 500 U.S. 391, 402–03, 111 S.Ct. 1884, 114 L.Ed.2d 432 ... (1991)[.]

*State v. Holbron,* 80 Hawai'i 27, 32, 904 P.2d 912, 917, *reconsideration denied,* 80 Hawai'i 187, 907 P.2d 773 (1995) (some citations omitted) (brackets in original) (emphasis deleted); *see also State v. Loa,* 83 Hawai'i 335, 350, 926 P.2d 1258, 1273 (1996); *State v. Robinson,* 82 Hawai'i 304, 310–11, 922 P.2d 358, 364–65 (1996).

*State v. Arceo,* 84 Hawai'i 1, 11–12, 928 P.2d 843, 853–54 (1996) (footnote omitted).

 "[T]he circuit court's response to a jury communication is the functional equivalent of an instruction." *State v. Haili,* 103 Hawai'i 89, 101, 79 P.3d 1263, 1275 (2003) (quoting *State v. Uyesugi,* 100 Hawai'i 442, 458, 60 P.3d 843, 859 (2002) (citations and internal quotation signals omitted)).

## B. *Sentencing*

 [A] sentencing judge generally has broad discretion in imposing a sentence. *State v. Gaylord,* 78 Hawai'i 127, 143–44, 890 P.2d 1167, 1183–84 (1995); *State v. Valera,* 74 Haw. 424, 435, 848 P.2d 376, 381 ... (1993). The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. *Gaylord,* 78 Hawai'i at 144, 890 P.2d at 1184; *State v. Kumukau,* 71 Haw. 218, 227–28, 787 P.2d 682, 687–88 (1990); *State v. Murray* [,] 63 Haw. 12, 25, 621 P.2d 334, 342–43 (1980); *State v. Fry,* 61 Haw. 226, 231, 602 P.2d 13, 16 (1979).

*Keawe v. State,* 79 Hawai'i 281, 284, 901 P.2d 481, 484 (1995). "[F]actors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions." *Fry,* 61 Haw. at 231, 602 P.2d at 17. And, " '[g]enerally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.' " *Keawe,* 79 Hawai'i at 284, 901 P.2d at 484 (quoting *Gaylord,* 78 Hawai'i at 144, 890 P.2d at 1184 (quoting *Kumukau,* 71 Haw. at 227–28, 787 P.2d at 688)).

*State v. Rauch,* 94 Hawai'i 315, 322, 13 P.3d 324, 331 (2000) (brackets and ellipsis points in original).

## C. *Questions Of Constitutional Law*

 "We answer questions of constitutional law 'by exercising our own independent judgment based on the facts of the case,' " and, thus, questions of constitutional law are reviewed on appeal "under the 'right/wrong' standard." *State v. Jenkins,* 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000) (citations omitted).

*State v. Aplaca,* 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001).

### III. *DISCUSSION*

A. *The Circuit Court's Supplemental Jury Instructions Were Not Erroneous.*

■■■ Gonsalves argues that the "trial court should have reconvened the jury and received its non-verdict on October 6, 2004[,]" following jury communication No. 4, which indicated that the jury was unable to reach a unanimous verdict. Gonsalves contends that "[b]y forcing the jury to continue to deliberate for two more days before reaching a verdict[,] the court denied [him] his right to trial by jury[.]" Gonsalves's arguments are without merit.

In *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), the United States Supreme Court held that an instruction to a deadlocked jury that directs minority jurors to reconsider their views in light of the views of the majority was permissible. Subsequently known as the *Allen* instruction, the instruction became increasingly popular because of "its perceived efficiency as a means of 'blasting' a verdict out of a deadlocked jury [.]" *Fajardo,* 67 Haw. at 597, 699 P.2d at 22 (quoting *People v. Gainer,* 19 Cal.3d 835, 844, 139 Cal.Rptr. 861, 865, 566 P.2d 997, 1001 (1977)). However, this court specifically rejected the use of the *Allen* instruction in *State v. Fajardo,* 67 Haw. 593, 699 P.2d 20 (1985).

In *Fajardo,* appellant was tried for murder. Following three days of jury deliberations, the jury reported that it could not reach a verdict. At a conference called to discuss the communication, the court stated its intent to give the jury a supplemental instruction. Appellant objected and asked for a mistrial. The motion was denied.

The trial court gave a supplemental instruction to the jury asking that it "continue ... deliberations in an effort to agree on a verdict." Additionally, the court advised that if a verdict could not be reached, "*this case must be tried again.*" Although the court reminded the jurors to consult and deliberate with a view to reaching an agreement "without violating your individual judgment," the court also stated that "*[e]ach juror who finds himself to be in the minority should reconsider his views in the light of the opinion of the jurors of the majority,*" and that the jurors in the majority should do likewise. The court then instructed the jury to retire to the jury room and "exercise your very best effort to reach a verdict." *Id.* at 594–95, 699 P.2d at 21–22 (emphasis in original).

On appeal, appellant Fajardo argued that the trial court erred in giving the *Allen* instruction to the deadlocked jury. We agreed because in our view the instruction was flawed for two reasons. First, whether or not a case must be retried is not a factor that a jury should consider in its deliberations. *Id.* at 600, 699 P.2d at 24.

Second, it was error for the trial court in *Fajardo* to admonish the minority jurors to reconsider their views in light of the opinion of the majority jurors. By instructing them in this way, the dissenting jurors were required to consider not only the evidence presented, but also their position in the minority. We held that this was error. As we stated, "A conscientious minority is the backbone of our American way of life. No individual, group or institution, however altruistic its intentions, can set aside the sincere convictions of a minority to conform to that of the majority for the expedience of rendering a unanimous decision." *Id.* at 601, 699 P.2d at 25. Therefore, we have explicitly rejected the *Allen* instruction and have held that it was error to instruct minority jurors to reconsider their views in light of the majority in their deliberations. *State v. Fajardo,* 67 Haw. 593, 699 P.2d 20 (1985).

*State v. Villeza,* 72 Haw. 327, 334–35, 817 P.2d 1054, 1058 (1991).

In *Villeza,* this court extended its holding in *Fajardo* by further holding that "it was error for the trial court to instruct the jury that it must unanimously decide that it was unable to reach a verdict." 72 Haw. at 335, 817 P.2d at 1058. This court stated that "[s]uch an instruction has no basis in the law and, like the *Allen* instruction, serves only to create a coercive environment incapable of supporting a meaningful verdict based solely

upon the jury's consideration of the evidence." 72 Haw. at 335, 817 P.2d at 1058.

In the present matter, the circuit court's response to jury communication No. 4, which excused the jury for the day, in no way mirrored the erroneous instructions in *Fajardo* and *Villeza* that were deemed to have "blasted" verdicts out of deadlocked juries. By contrast, the early dismissal of jurors on the first day of deliberations did not "create a coercive environment incapable of supporting a meaningful verdict based solely upon the jury's consideration of the evidence." *Villeza*, 72 Haw. at 335, 817 P.2d at 1058. Therefore, "when read and considered as a whole, the instructions given" were not "prejudicially insufficient, erroneous, inconsistent, or misleading," *Kinnane*, 79 Hawai'i at 49, 897 P.2d at 976, and the circuit court did not err in instructing the jury.

### B. The Circuit Court Did Not Err In Sentencing Gonsalves As A Repeat Offender.

▮▮▮ Gonsalves argues that the "factual issue of whether [he] is a repeat offender should have been determined by a jury and subject[ed] to proof beyond a reasonable doubt." Gonsalves avers that "[t]he jury verdict only authorized a sentence ranging from probation to an indeterminate sentence of ten years" and that

> [a]pplication of Hawaii's repeat offender statute ... to him *decreased* the prescribed range of penalties by eliminating the possibility of probation and requiring the court to impose an indeterminate sentence of ten year[']s imprisonment with a mandatory minimum sentence of three years and four months, without a finding by a jury based upon proof beyond a reasonable doubt[.]

(Emphasis added).[5] Gonsalves insists that the United States Supreme Court's decisions in *Apprendi* and *Blakely* support his foregoing contention. Gonsalves is mistaken.

The rule declared by the United States Supreme Court in *Apprendi* was that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. The Court in *Blakely* extended the *Apprendi* rule, explaining that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." 542 U.S. at 302, 124 S.Ct. 2531 (emphasis in original).

In *State v. Rivera*, 106 Hawai'i 146, 102 P.3d 1044 (2004), this court analyzed the effect of the Supreme Court's decisions in *Apprendi* and *Blakely* on Hawaii's sentencing scheme:

> *Blakely* focused on the perceived defects of Washington state's determinate sentencing scheme, applying the rule the Court had previously crafted in *Apprendi*, *i.e.*, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. Thus, the *Blakely* majority held that a Washington court's sentencing of a defendant to more than three years above the 53–month statutory maximum of the prescribed "standard range" for his offense, on the basis of the sentencing judge's finding that the defendant had acted with deliberate cruelty, violated his sixth amendment right to trial by jury. In our view, the *Blakely* analysis vis-a-vis *Apprendi* is confined to the meaning of the construct "statutory maximum" within the context of *determinate* or "guideline" sentencing schemes. Inasmuch as Hawaii's extended term sentencing structure is *indeterminate*, we believe that *Blakely* does not affect the "intrinsic-extrinsic" analysis that

---

5. Gonsalves does not raise as error on appeal the circuit court's imposition of a mandatory minimum term of imprisonment of two years and six months based on the involvement of the substance methamphetamine, pursuant to HRS § 712–1242(3), *see supra* note 1. Effective July 1, 2004, the legislature amended HRS § 712–1242 by, *inter alia*, deleting subsection (3). *See* 2004 Haw. Sess. L. Act 44, § 6 at 211.

this court articulated in [*State v.] Kaua* [, 102 Hawai'i 1, 72 P.3d 473 (2003)].

The *Blakely* majority explained that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." 124 S.Ct. at 2537 (emphasis in original). "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional facts." *Id.* (emphasis in original). Accordingly, the essential mandate of *Apprendi*— *i.e.,* that any fact other than a prior conviction must be submitted to a jury and proved beyond a reasonable doubt—is unaffected by the Court's decision in *Blakely. Blakely* can reasonably be construed, then, as a gloss on *Apprendi,* clarifying (1) that the upward limit of any given presumptive sentencing range prescribed in a statutory scheme utilizing a "determinate" sentencing "guideline" system constitutes the "statutory maximum" and (2) that a defendant upon whom a sentence exceeding this "statutory maximum" is imposed is entitled to all of the procedural protections that *Apprendi* articulates.

*Rivera,* 106 Hawai'i at 156, 102 P.3d at 1054 (emphases in original).

By its plain language, the rule in *Apprendi, i.e.,* that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt[,]" excepts from its purview "the fact of a prior conviction[.]" 530 U.S. at 490, 120 S.Ct. 2348.

The Supreme Court exempted "prior convictions" from the *Apprendi* requirements, reasoning that, with respect to these previous convictions, defendants have already received the requisite procedural safeguards. *See Apprendi,* 530 U.S. at 488, 120 S.Ct. 2348, 147 L.Ed.2d 435. This reasoning was consistent with the Supreme Court's earlier decision in *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), in which the Court held that recidi-

vism was a traditional basis for increasing an offender's sentence:

> [T]he court said long ago that a State need not allege a defendant's prior conviction in the indictment or information that alleges the elements of an underlying crime, even though the conviction was necessary to bring the case within the statute.

*Almendarez–Torres,* 523 U.S. at 243, 118 S.Ct. 1219, 140 L.Ed.2d 350.

*Kaua v. Frank,* 350 F.Supp.2d 848, 856 n. 7 (D. Hawai'i 2004).

Based on the foregoing, Gonsalves's argument that somehow the jury's verdict did not authorize sentencing him to a mandatory minimum term as a repeat offender is unfounded. *Apprendi* pronounced a rule regarding the judge-imposed penalties that increase statutory *maximum* sentences, not mandatory minimum sentences, because the judicial factfinding "that give[s] rise to a mandatory minimum sentence . . . does not expose a defendant to a punishment greater than otherwise legally prescribed." *Harris v. United States,* 536 U.S. 545, 565, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002).

Prior to *Apprendi,* in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), the United States Supreme Court "sustained a statute that increased the minimum penalty for a crime, though not beyond the statutory maximum, when the sentencing judge found, by a preponderance of the evidence, that the defendant had possessed a firearm." *Harris,* 536 U.S. at 550, 122 S.Ct. 2406. *Harris* then answered the question of "whether *McMillan* stands after *Apprendi.*" *Id.*

*Apprendi's* conclusions do not undermine *McMillan's.* There was no comparable historical practice of submitting facts increasing the mandatory minimum to the jury, so the *Apprendi* rule did not extend to those facts. Indeed, the Court made clear that its holding did not affect *McMillan* at all:

> "We do not overrule *McMillan.* We limit its holding to cases that do not involve the imposition of a sentence more severe than the statutory maxi-

mum for the offense established by the jury's verdict—a limitation identified in the *McMillan* opinion itself." 530 U.S. at 487, n. 13, 120 S.Ct. 2348, 147 L.Ed.2d 435.

The sentencing factor in *McMillan* did not increase "the penalty for a crime beyond the prescribed statutory maximum," 530 U.S. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435; nor did it, as the concurring opinions in *Jones[ v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999),] put it, "alter the congressionally prescribed range of penalties to which a criminal defendant is exposed," 526 U.S. at 253, 119 S.Ct. 1215, 143 L.Ed.2d 311 (SCALIA, J., concurring). As the *Apprendi* Court observed, the *McMillan* finding merely required the judge to impose "a specific sentence within the range authorized by the jury's finding that the defendant [was] guilty." 530 U.S. at 494, n. 19, 120 S.Ct. 2348, 147 L.Ed.2d 435.

*Harris*, 536 U.S. at 563–64, 122 S.Ct. 2406. The Supreme Court further explained:

> Whether chosen by the judge or the legislature, the facts guiding judicial discretion *below* the statutory maximum need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt. When a judge sentences the defendant to a mandatory minimum, no less than when the judge chooses a sentence within the range, the grand and petit juries already have found all the facts necessary to authorize the Government to impose the sentence. *The judge may impose the minimum, the maximum, or any other sentence within the range without seeking further authorization from those juries—and without contradicting Apprendi.*

536 U.S. at 565, 122 S.Ct. 2406 (emphases added); *see also State v. Tafoya*, 91 Hawai'i 261, 274 n. 18, 982 P.2d 890, 903 n. 18 (1999).

Thus, based on (1) the plain language of *Apprendi* and (2) the Supreme Court's holding in *Harris* that *Apprendi* does not apply to mandatory minimums, we believe that the circuit court in the present matter did not offend binding federal precedent in sentencing Gonsalves to a mandatory minimum term

of imprisonment as a repeat offender. *See also United States v. Jones*, 418 F.3d 726 (7th Cir.2005); *United States v. Hitchcock*, 286 F.3d 1064 (9th Cir.2002), *amended by* 298 F.3d 1021 (9th Cir.2002) ("It is now clear that mandatory minimums do not implicate *Apprendi*."); *United States v. Antonakeas*, 255 F.3d 714, 728 n. 11 (9th Cir.2001); *United States v. Garcia–Sanchez*, 238 F.3d 1200, 1201 (9th Cir.2001).

## IV. *CONCLUSION*

Based on the foregoing analysis, we affirm the judgment and sentence of the circuit court.

Concurring Opinion by ACOBA, J. with whom DUFFY, J., joins.

I concur in the result. As to the question of whether the mandatory minimum sentence in this case runs afoul of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) or *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), I believe it does not, based on the reasoning in the dissent in *State v. Rivera*, 106 Hawai'i 146, 102 P.3d 1044 (2004).

Under Hawai'i Revised Statutes (HRS) § 706–606.5, as quoted by the majority, the mandatory minimum sentence herein is premised on a two-fold requirement—"one prior felony conviction" and an "instant conviction" of "a class B felony." The *Rivera* dissent noted that,

> in *Blakely*, the United States Supreme Court further explicated the holding in [*Apprendi*], and emphatically reaffirmed that the United States Constitution's Sixth Amendment right to a jury trial mandates that " 'other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Blakely*, [542] U.S. at [301, 124 S.Ct. at 2536], ... (quoting *Apprendi*, 530 U.S. at 490[, 120 S.Ct. 2348], ...).

*Rivera*, 106 Hawai'i at 166, 102 P.3d at 1064 (Acoba, J., dissenting) (emphasis added) (brackets omitted). Pursuant to the express

qualification by the United States Supreme Court, a "prior conviction" prerequisite does not implicate *Apprendi* or *Blakely.* The same is true of the "instant conviction" condition, for, as observed in the dissent,

> [t]he Court made clear "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."* [*Blakely,* 542 U.S. at 296, 124 S.Ct. 2531] (emphasis in original). Consequently,
>
>> the ... "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. *When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority.*

*Id.* (emphasis in original and emphasis added) (internal quotation marks and citation omitted).

*Id.* at 170, 102 P.3d at 1068. Hence, because the "instant conviction" prong is satisfied by the jury verdict, the mandatory minimum sentence did not require the sentencing judge to find any fact beyond that already inhering in Defendant–Appellant Richard Gonsalves's conviction. This is a case, then, where the "prior conviction" requirement was removed from jury adjudication and the "instant conviction" requirement did not necessitate findings beyond the jury verdict itself. Therefore, fact finding by a jury, as expounded in *Apprendi* and *Blakely,* was not required in imposing the mandatory minimum sentence against Defendant.