881 P.2d 504

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Brett Matthew HOEY, Defendant–Appellant.**

No. 17240.

Supreme Court of Hawai'i.

Sept. 22, 1994.

18

20

Joyce K. Matsumori–Hoshijo, Deputy Public Defender, Honolulu, for defendant-appellant Brett Matthew Hoey.

Caroline M. Mee, Deputy Prosecuting Atty., Honolulu, for plaintiff-appellee State of Hawai'i.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

LEVINSON, Justice.

The defendant-appellant Brett Matthew Hoey appeals his convictions of robbery in the first degree and kidnapping following a jury trial in the Circuit Court of the First Circuit Court, State of Hawai'i. Hoey urges the following points of error on appeal: (1) that the trial court erroneously denied his motion to dismiss the charges against him because his trial was not timely commenced as required by Hawai'i Rules of Penal Procedure (HRPP) 48;[1] (2) that the trial court erroneously admitted a redacted version of his tape-recorded confession to the police into evidence despite the fact, inter alia, that he had not voluntarily, knowingly, and intelligently waived his right to counsel; and (3) that the trial court erroneously refused to instruct the jury regarding the possibility that the kidnapping and robbery counts of the complaint had merged, in which case he could be convicted at most of the robbery offense.

We agree with all three of Hoey's points of error. Accordingly, because we hold that the commencement of Hoey's trial was untimely,

---

1. HRPP 48 (1985), entitled "Dismissal," provides in relevant part:

(b) By Court. Except in the case of traffic offenses, the court shall, on motion of the defendant, dismiss the charge, *with or without prejudice in its discretion,* if trial is not commenced within 6 months from:

(1) the date of arrest or of filing of the charge, whichever is sooner, on any offense based on the same conduct or arising from the same criminal episode for which the arrest or charge was made[.]

. . . .

(c) Excluded Periods. The following periods shall be excluded in computing the time for trial commencement:

(1) *periods of delay resulting from* collateral or other proceedings concerning the defendant, including but not limited to penal irresponsibility examinations and periods during which [the defendant] is incompetent to stand trial, *hearings on pretrial motions,* interlocutory appeals[,] and trials of other charges;

. . . .

(3) *periods of delay resulting from* a continuance granted at the request or with the consent of the defendant or [the defendant's] counsel;

. . . .

(5) *periods of delay resulting from* the absence or unavailability of *the defendant;* [and]

. . . .

(8) other *periods of delay* for good cause. (Emphasis added.)

in violation of HRPP 48, we vacate the trial court's judgment of conviction and remand the matter for the entry of an order dismissing the complaint. However, because the circuit court has the discretion, on remand, to dismiss the complaint without prejudice,[2] and it is possible that Hoey may be recharged, we deem it necessary to provide guidance with respect to the remaining issues in the event of a new trial. Thus, for the reasons stated below, we hold that the trial court committed reversible error both when it allowed Hoey's confession into evidence and when it refused to instruct the jury as to the applicable law regarding merger of offenses. *Cf. State v. Wasson,* 76 Hawai'i 415, 879 P.2d 520, 523–24 (Sup.1994) (Because an HRPP 48 violation may result in a dismissal with or without prejudice, it was necessary for this court to address the defendant's constitutional speedy trial claim.); *Knodle v. Waikiki Gateway Hotel,* 69 Haw. 376, 391, 742 P.2d 377, 386 (1987) ("[i]n view of the [potential] retrial of the case, we discuss [other] errors as well").

## I. BACKGROUND

On June 2, 1992, the Office of the Prosecuting Attorney for the City and County of Honolulu filed a two-count complaint in the first circuit court, charging Hoey as follows:

*COUNT I:* On or about the 19th of May, 1992, in the City and County of Honolulu, State of [Hawai'i], BRETT MATTHEW HOEY, while in the course of committing theft, and while armed with a dangerous instrument, did use force against Susan Fasone, a person who was present, with the intent to overcome that person's physical resistance or physical power of resistance, thereby committing the offense of Robbery in the First Degree, in violation of Section 708–840(1)(b)(i) of the [Hawai'i] Revised Statutes.[3]

*COUNT II:* On or about the 19th day of May, 1992, in the City and County of Honolulu, State of [Hawai'i], BRETT MATTHEW HOEY did intentionally or knowingly restrain Susan Fasone with intent to facilitate the commission of a felony or flight after the commission of a felony, thereby committing the offense of Kidnapping, in violation of Section 707–720(1)(c) of the [Hawai'i] Revised Statutes.[4]

On the following day, May 20, 1992, Hoey was arrested by Detective Henry Nobriga of the Honolulu Police Department (HPD). At the police station, Detective Nobriga conducted a tape-recorded interrogation of

---

**2.** *See supra* note 1.

**3.** Hawai'i Revised Statutes (HRS) § 708–840 provides in relevant part:

> **Robbery in the first degree.** (1) A person commits the offense of robbery in the first degree if, in the course of committing theft:
> . . . .
> (b) He is armed with a dangerous instrument and:
> (i) He uses force against the person of anyone present with intent to overcome that person's physical resistance or physical power of resistance[.]
> . . . .
> (2) As used in this section, "dangerous instrument" means any . . . weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or threatened to be used is capable of producing death or serious bodily injury.
> (3) Robbery in the first degree is a class A felony.

HRS § 708–840 (1985 & Supp.1992). Upon his conviction, Hoey was sentenced to an indeterminate prison term of twenty years. *See* HRS § 706–659 (1985).

**4.** HRS § 707–720 provides in relevant part:

> **Kidnapping.** (1) A person commits the offense of kidnapping if the person intentionally or knowingly restrains another person with intent to:
> . . . .
> (c) Facilitate the commission of a felony or flight thereafter[.]
> . . . .
> (2) Except as provided in subsection (3), kidnapping is a class A felony.
> (3) In a prosecution for kidnapping, it is a defense which reduces the offense to a class B felony that the defendant voluntarily released the victim, alive and not suffering from serious or substantial bodily injury, in a safe place prior to trial.

HRS § 707–720 (Supp.1992). Upon his conviction, Hoey was sentenced to an indeterminate prison term of twenty years, the jury having entered a special finding in its guilty verdict that Hoey had not voluntarily released Fasone alive and not suffering from serious or substantial bodily injury in a safe place. *See* HRS § 706–659. The trial court's judgment of conviction provided that Hoey's kidnapping and robbery sentences were to run concurrently.

Hoey. At the outset of the interrogation process, Detective Nobriga utilized an "HPD Form 81" in conjunction with advising Hoey of his *Miranda* rights. After some preliminary remarks by Detective Nobriga, the tape-recorded interrogation commenced with the following colloquy:

Q. [by Detective Nobriga]: I'm gonna ask you questions about [a] robbery and kidnapping which occurred on, uh, May 19, 1992, at about eleven o'clock that night. That's at ... 1009 University Avenue. But first I wanna inform you of certain rights you have under the Constitution. Before I ask you any questions, you must understand your rights. You have the right to remain silent. You don't have to say anything to me or answer any of my questions. Anything you say may be used against you at your trial. You have a right to counsel of your choice or talk to anyone else you may want to. If you cannot afford an attorney—well, you also have a right, I should say, to have an attorney present while I talk to you. If you cannot afford an attorney, the court will appoint one for you. *You think you'll need an attorney now?*

A. [by Hoey]: *I don't have the money to buy one.*

Q. *No, well, I'm just saying do you think you'll need an attorney?*

A. *Right now, I don't think so.*

Q. Okay. If you decide to answer my questions without an attorney being present, you still have the right to stop answering at any time. [Coughs.] Excuse me. In other words, if you don't want to answer a question, you don't have to. Do you understand what I've told you?

A. Yes.

Q. Okay. I'll go over would you like to tell me what happened, but for now this is what I need for you to do. Initial where it says "yes" here [on the HPD Form 81]. You know why you're being arrested?

A. Yes.

Q. Okay. Here it says, "Do you want an attorney now?" The answer was "no." Is that correct?

A. Yes.

Q. Okay. Now, do you understand what I've told you? Go ahead and put "yes."

A. [No audible response.]

Q. Okay, go ahead and mark "yes" there [apparently, the "yes" space following the question, "Would you like to tell me what happened?"] for now. Well, yeah, go ahead and mark "yes." And sign right here [on the line designating] your name.

State's Exhibit 1 (emphasis added).

Having engaged in the foregoing colloquy and obtained Hoey's initials and signature on the HPD Form 81, Detective Nobriga proceeded to question Hoey regarding the events of May 19, 1992. Hoey fully confessed to the charged offenses. In substance, he admitted to Detective Nobriga that at approximately 10:30 p.m., he and an accomplice, Chad Akimoto, entered Carnival Carnival, a video arcade in the University district of Honolulu, ostensibly to repair video games. Once the establishment had been closed and the front entrance locked for the night, Susan Fasone, the night supervisor, was the only person present with them. Hoey and Akimoto lured Fasone into the maintenance room, at which time Akimoto struck Fasone on the head with a length of two-by-four lumber. After Fasone fell to the floor, Akimoto bound her hands and feet. Hoey attempted to tape Fasone's mouth, but, because there was insufficient electrical tape available for the purpose, Hoey partially covered Fasone's head with a plastic bag. Hoey and Akimoto then took approximately $1500.00 of store receipts, as well as $200.00 and a Hawaiian bracelet belonging to Fasone. Hoey disabled the telephone and apologized to Fasone for her physical injury. The men then locked the door to the maintenance room and fled Carnival Carnival, leaving Fasone bound inside the maintenance room.

Hoey was arraigned in district court on May 21, 1992, and the case was committed to circuit court for further proceedings on May 26, 1992. Bail was set at $100,000.00 in the aggregate; Hoey has remained continuously in custody since that time.

On June 18, 1992, Hoey was arraigned in circuit court, entering pleas of not guilty to the two charges. The arraignment judge set the matter for trial during the week of September 8, 1992.

On June 8, 1992, Hoey filed a motion for supervised release and/or bail reduction. The motion came on for hearing in the circuit court on July 13, 1992. The presiding judge orally denied Hoey's motion for supervised release but reduced his bail to $35,000.00 in the aggregate, subject to a number of conditions. The written order memorializing the court's ruling was filed on July 30, 1992.

For reasons not reflected in the record, the week of September 8, 1992 came and went without the present matter coming on for trial. The matter was, however, called for a trial status conference in the fourteenth division of the first circuit court on October 5, 1992, having been designated the "tenth backup" on the criminal division's master calendar. Because the deputy public defender assigned to Hoey's case was scheduled to be in trial in another case—*State v. Kaikala,* Cr. No. 91–1938—from October 6 through October 9, 1992, the court ordered that the present matter be placed on "float" status pending the availability of defense counsel.

On October 23, 1992, Hoey filed a motion to continue trial week and pre-trial motions deadline in order to allow him to request various medical records from the state of New York that might bear upon his fitness to proceed as well as a potential defense of lack of penal responsibility. The motion was heard by the administrative judge of the criminal division on the same day. Following argument, during which Hoey's counsel orally waived Hoey's constitutional right to a speedy trial, as well as his rights under HRPP 48, pending a determination of his fitness to proceed, the administrative judge granted the motion to continue trial week and pulled the case from the master calendar.

On November 2, 1992, Hoey filed a motion for a mental evaluation to determine his present fitness to proceed, his mental condition at the time of the alleged offenses, and the existence of any mental disease, disorder, or defect that would affect his penal responsibility. On November 30, 1992, the criminal motions judge entered an order for a mental examination, appointing a "three-panel" of mental health professionals to conduct independent evaluations, and setting a hearing date of February 10, 1993 to determine Hoey's fitness to proceed. At the February 10, 1993 hearing, the circuit court orally found Hoey fit to proceed; the written order to that effect was filed on February 18, 1993, formally restoring the present matter to the ready calendar.

A further status conference was conducted on March 5, 1993, at which the circuit court set a firm trial date of April 19, 1993.

### A. *Motion To Dismiss Charges For Violation Of HRPP 48*

On April 19, 1993, the day trial was to commence in the present matter, Hoey filed a motion to dismiss charges for violation of HRPP 48, on the ground that his trial had not commenced within six months of his arrest, net of time periods excludable under HRPP 48(c).[5]

The trial court addressed the motion as the first order of business. Although both Hoey and the prosecution agreed that three hundred thirty-four days had elapsed from May 20, 1992 (the date of Hoey's arrest) to the date of trial commencement, there was vigorous disagreement as to whether the limit of one hundred eighty non-excludable days imposed by HRPP 48[6] had been exceeded. Hoey insisted that it had, and the prosecution was equally adamant that it had not.

---

5. Pursuant to [HRPP 48(b)], a defendant may move to dismiss the charges against him or her if trial is not commenced within six months (*construed as one hundred eighty days*) from the events enumerated in its provisions. HRPP 48(c) mandates that the court exclude certain time periods from its computation in determining whether the one hundred eighty days have run. Before the court may conclude as a matter of law that any of the excluded time periods set forth in HRPP 48(c) have been established, it must first make the appropriate [findings of fact].
 *State v. Hutch,* 75 Haw. 307, 330–31, 861 P.2d 11, 23 (1993) (emphasis added).

6. *See supra* note 5.

The trial court sided with the prosecution and denied Hoey's motion to dismiss, entering the following findings of fact (FOFs) and conclusions of law (COLs) on June 15, 1993:

## FINDINGS OF FACT

1. [Hoey] was arrested on May 20, 1992, the date upon which the one hundred eighty (180) day period during which trial must commence under [HRPP] 48 began to run;

2. Trial herein commenced on April 19, 1993, three hundred thirty[-]four (334) days following [Hoey's] arrest;

3. From May 26, 1992, to and including May 29, 1992, the Office of the Public Defender held a retreat and seminar, and no public defenders were available to try cases;

4. From June 8, 1992, to and including July 13, 1992, [Hoey's] Motion for Supervised Release and/or Bail Reduction was pending; supervised release was denied and [Hoey's] bail was reduced at the hearing before [the circuit court] on July 13, 1992;

5. On October 23, 1992, [Hoey], through counsel, advised [the circuit court] that he would seek a mental evaluation and determination of fitness to proceed; [Hoey's] motion to continue trial on this ground[ ] was filed the same day and was granted by [the circuit court] on October 23, 1992; [Hoey] was subsequently found fit to proceed to trial by [the circuit court] on February 10, 1993;

6. From August 6, 1992, to and including August 13, 1992, defense counsel ... was in trial in the case of State v. Tabios, Cr. No. 92–0004, ... before [the circuit court];

7. From October 6, 1992, to and including October 9, 1992, defense counsel ... was in trial in the case of State v. Kaikala, Cr. No. 91–1938, ... before [the circuit court];

8. From November 23, 1992, to and including November 25, 1992, a judicial conference was being held and no circuit court judges were available to try cases;

9. At a trial status conference before the [trial court] ..., the [prosecution] requested and [Hoey] agreed to a firm trial date of April 19, 1993, which date was the soonest available date following the [assigned deputy prosecuting attorney's] return from vacation;

10. From March 19, 1993, to and including April 5, 1993, [the deputy prosecuting attorney] was on vacation and unavailable to try cases;

11. To the extent that any [FOF] above is properly a [COL], it shall be treated as such.

## CONCLUSIONS OF LAW

1. The period from May 26, 1992, to and including May 29, 1992, a period of four (4) days, during which no public defenders were available to try cases[,] is excludable under HRPP Rule 48(c)(5)[,] unavailability of the [defendant], or alternatively, under subsection (c)(8) for good cause shown;

2. The period from June 8, 1992, to and including July 13, 1992, a period of thirty[-]five (35) days, during which [Hoey's] Motion for Supervised Release and/or Bail Reduction was pending, is excludable under HRPP Rule 48(c)(1) as a collateral or other proceeding concerning [Hoey]; [7]

3. The period from October 23, 1992, to and including February 10, 1993, a period of one hundred eleven (111) days, during which [Hoey's] Motion for Mental Evaluation ... and Judicial Determination of Fitness to Proceed was pending, is excludable under HRPP Rule 48(c)(1) as a collateral or other proceeding concerning [Hoey];

4. The period from August 6, 1992, to and including August 13, 1992, a period of eight (8) days, during which defense counsel ... was in trial in another case, State v. Tabios, is excludable under HRPP Rule 48(c)(5)[,] unavailability of the [defendant],

---

7. This represents a miscalculation of one day. The period from June 8, 1992 through July 13, 1992 is thirty-six days.

or alternatively, under subsection (c)(8) for good cause shown;

5. The period from October 6, 1992, to and including October 9, 1992, a period of four (4) days, during which defense counsel ... was in trial in another case, *State v. Kaikala*, is excludable under HRPP Rule 48(c)(5)[,] unavailability of the [defendant], or alternatively, under subsection (c)(8) for good cause shown;

6. The period from November 23, 1992, to and including November [25], 1992, a period of three (3) days, during which a judicial conference was taking place, is excludable under HRPP Rule 48(c)(8), for good cause shown;

7. The period from March 5, 1993, when [Hoey], through counsel, agreed to a firm trial date of April 19, 1993, to and including April 19, 1993, is excludable under HRPP Rule 48(c)(3) as a continuance of trial with the agreement of the defendant or his counsel, except for the period from March 18, 1993, to and including April 5, 1993, during which the assigned [deputy prosecuting attorney] was on vacation, leaving a net excludable period of twenty[-]eight (28) days; [8]

8. Excludable days total one hundred ninety[-]three (193); and, therefore, one hundred fourty[-]one [sic] (334 − 193 = 141) days count toward the one hundred eighty (180) HRPP Rule 48 limit, leaving a net of thirty[-]nine (180 − 141 = 39) days before the expiration of the Rule 48 period as of April 19, 1993;

9. Even assuming that some portions of the entire one hundred ninety[-]three (193) day period are not excluded, this court still finds no violation of HRPP Rule 48;

10. To the extent that any [COL] above is properly [an FOF], it shall be treated as such.

### B. *Waiver Of Right To Counsel*

On April 19, 1993, Hoey's counsel filed a multi-issue, "boilerplate" motion in limine with the trial court, in which he sought, inter alia, an order excluding and precluding from any use at trial "all statements made by [Hoey] to the police prior to trial, and statements and commentary by the police upon [Hoey's] utterances[.]" At the hearing on the motion, Hoey argued that he had not voluntarily and intelligently waived his right to counsel before making his statement to Detective Nobriga on May 20, 1992, because he had not understood that court-appointed counsel would be provided at no expense to him in the event that he could not afford it. Specifically, Hoey's counsel urged that "[y]ou cannot voluntarily waive something that you do not understand." 4/19/93 Tr. at 51.

During the evidentiary phase of the hearing, Detective Nobriga's tape-recorded interrogation of Hoey, described above, was played for the trial court. In addition, the prosecution adduced the testimony of Detective Nobriga himself. In substance, Detective Nobriga testified as follows: At the outset of the interrogation, Detective Nobriga informed Hoey of his rights using HPD Form 81, and Hoey appeared to understand. Hoey had previously been arrested and was familiar with the criminal justice system. Detective Nobriga did not coerce Hoey into making his statement, and Hoey at no time indicated that he did not want to make a statement. Hoey initialed and signed the HPD Form 81 on the appropriate spaces before the substantive interrogation began.

On cross-examination, the following exchange transpired between Detective Nobriga and defense counsel:

Q. [By defense counsel]: Now, after you told [Hoey] if you cannot afford an attorney, the Court will appoint one for you, do you think you need an attorney now, his response was, I don't have the money to buy one, correct?

A. [By Detective Nobriga]: That is correct.

Q. At that point in time, you did not explain to him that if he wanted an attorney there, all he had to do was tell you and

---

8. This represents a miscalculation of one day. The period from March 5, 1993 through April 19, 1993 is forty-six days. The period from March 18, 1993 through April 5, 1993 is nineteen days. Therefore, the net excludable period is actually twenty-seven days.

you would make a phone call and an attorney would come down free of charge?

A. *I never explained that to him, no.*

. . . .

Q. Let's go through it, again. You told him he could have a court[-]appointed attorney?

A. Correct.

Q. Then he told you, I can't buy one, I cannot buy an attorney, correct?

A. Correct.

Q. Then you did nothing after that point in time to explain to him that a court[-]appointed attorney did not require money, only a simple, yeah, I'd like one. You didn't tell him that?

. . . .

A. No.

. . . .

Q. You did not?

A. After he asked for one, that he didn't have the money, no.

Q. Then you proceeded on and said okay, no, well, I am just saying, do you think you'll need an attorney, and he says right now, I don't think so, right?

A. That is what he said, yes.

Q. There is nothing here that suggests that he understood that he can have a free court[-]appointed attorney, correct?

A. Well again, HPD–81, that is what I read from.

Q. But after you read from HPD–81, that is when he said that he needed the money, correct?

A. After that, yes.

Q. *So HPD–81 didn't explain it to him, because he wouldn't have asked the question, correct?*

A. *I suppose, yes.*

Q. *You did nothing to explain to [sic] it to him after that point in time?*

A. *No.*

*Id.* at 25–26, 31–33 (emphasis added).

Testifying in his own behalf, Hoey stated that he assumed that he would have to pay for a court-appointed attorney, that Detective Nobriga did not tell him that he could have one at no charge, and that if he had known

that he could have had a free attorney, he would have requested one for the interrogation. On cross-examination, Hoey admitted that he read at an eighth or tenth grade level and that he understood all of the words on the HPD Form 81. However, he testified that he did not understand at the time that the phrase "if you cannot afford an attorney, the court will appoint one for you" meant that the court would appoint an attorney at no charge.

After argument by counsel, the trial court ruled orally as follows:

THE COURT: . . . [T]he Court is ready to rule. I find the following [FOFs] and [COLs]: On or about May 20, 1992, while [Hoey] was in custody, Detective Nobriga informed [Hoey] of his constitutional rights using HPD form 81. That form included the statement that if [Hoey] cannot afford an attorney the Court will appoint one.

Secondly, [Hoey] did not appear ill or intoxicated at the time. Third, [Hoey] testified that he completed 9th grade and can read at an intermediate level.

Fourth, [Hoey] testified that . . . he did understand the words on the form, and that he did, in fact, sign the form.

Fifth, no threats or promises were made to make [Hoey] give a statement. He indicated that he wanted to give a statement because he wanted to make sure that if the co-defendant has giving [sic] a statement, that he was able to tell his side of the story.

Sixth, [Hoey] had been previously informed of his constitutional rights at least on one other occasion.

Looking at the totality, the Court finds [Hoey] was given his . . . constitutional rights, and voluntarily gave the statement to Detective Nobriga on May 20, 1992.

Therefore the motion to suppress is denied.

*Id.* at 57–58.

As we have already noted, a redacted version of the tape-recorded interrogation was played for the jury during the prosecution's case in chief at Hoey's trial.

## C. *Jury Instruction Regarding Merger Of Robbery And Kidnapping*

The trial court having denied Hoey's HRPP 48 motion to dismiss and ruled as a matter of law that Hoey's statement to Detective Nobriga had been voluntarily given, trial commenced on April 19, 1993 with jury selection. The prosecution's case consisted of the testimonies of Detective Nobriga and Fasone, a redacted version of the tape-recorded interrogation played for the jury over Hoey's objection, and a photograph of Fasone's head injury caused by the blow from the two-by-four. Hoey did not testify in his own behalf, his case consisting of cross-examination of the prosecution's witnesses.

After the prosecution rested its case on April 20, 1993, Hoey orally moved for a judgment of acquittal as to the kidnapping count of the complaint on the ground that, as a matter of law, the kidnapping offense had merged into the robbery offense pursuant to HRS § 701–109(1)(e) (1985).[9] The trial court denied the motion on April 21, 1993, ruling orally that

> [t]he standard is whether the acts of Kidnapping extended beyond the acts necessarily and incidentally committed during the robberies.

9. HRS § 701–109 (1985) provides in relevant part:

**Method of prosecution when conduct establishes an element of more than one offense.** (1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. [The defendant] may not, however, be convicted of more than one offense if:

> . . . .
> (e) The offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of conduct constitute separate offenses.

We have recently observed that

the question whether [a defendant] could be separately convicted of [multiple] offenses [pursuant to HRS § 701–109] could not have been properly addressed by the trial court via a motion for judgment of acquittal because a motion of a judgment of acquittal tests the sufficiency of the evidence. Hawai'i Rules of Penal Procedure (HRPP) Rule 29(a)[.]

. . . .

The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution

. . . [W]hat the Court understands the case law to say is that if the defendant were to pull a gun on someone and hold them at bay while they then took money from a cash register, I do not think that is a situation where the defendant could be charged with two separate acts.

However, where the defendant goes beyond that, as there has been evidence in this case with respect to tying up the victim, as well as locking the victim up, that is clearly a situation where . . . there is no overlap . . . and [there are] two separate crimes which the State can charge. Therefore, there is no merger on that.

4/21/93 Tr. at 11.[10]

During settlement of jury instructions, *see* HRPP 30(b) (1981), defense counsel offered Defendant's Supplemental Instruction No. 4, which provided that "[i]f you find [Hoey] committed both the charge [sic] of Robbery in the First Degree and the charge [sic] of Kidnapping, concurrently in time, you need only render a verdict in the principle [sic] offense of Robbery in the First degree without determining whether [Hoey] is guilty of

and in full recognition of the province of the jury, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.

. . . .

Whether a course of conduct gives rise to more than one crime [within the meaning of HRS § 701–109(1)(e)] depends in part on the intent and objective of the defendant. The test to determine whether the defendant intended to commit more than one offense is whether the evidence discloses one general intent or discloses separate and distinct intents. Where there is one intention, one general impulse, and one plan, there is but one offense. All factual issues involved in this determination must be decided by the trier of fact.

*State v. Alston*, 75 Haw. 517, 527–28, 531, 865 P.2d 157, 163–65 (1994) (citations omitted).

10. The trial court's oral ruling was memorialized in written FOFs, COLs, and an order, filed on May 17, 1993, denying Hoey's motion for judgment of acquittal on merger grounds. Inasmuch as HRS § 701–109 issues are not ordinarily proper subjects of an HRPP 29(a) motion for judgment of acquittal, we construe the trial court's order to constitute an implicit recognition that Hoey's HRS § 701–109(1)(e) claim involved questions of fact that should be decided by the jury. *See supra* note 9.

Kidnapping." The following dialogue ensued:

> THE COURT: ... Turning to 4, [it] is going to be refused.
>
> [DEFENSE COUNSEL]: Is that correct?
>
> THE COURT: Well, because this says, I assume this is your merger argument? Or have I misread this?
>
> [DEFENSE COUNSEL]: Well, I think we have the right to argue to the jury with respect to it as a factual issue that this is a merger, and as a matter of law you denied that, but I think as a matter of fact, I have a right to argue that. The case law ... said that ... I have a right to present that to them.
>
> THE COURT: Mr. [prosecutor], anything on the issue? You know the problem that I have with this is that the basis for the Court's denial [of] the motion to dismiss Count 1 [sic, actually Count 2] for merger, was that.
>
> [DEPUTY PROSECUTING ATTORNEY]: Excuse me, Count 2, was the fact that the acts alleged in the Kidnapping went beyond those necessarily and incidentally connected with the Robbery, and now we have an offered instruction which is pegged on currency in time, which is not applicable to the Court's ruling on the merger issue earlier this morning.
>
> Therefore, the State is going to object to the way that this is worded because ... here we have an instruction which seems to go to currency in time.
>
> And of course ... the evidence is that there was no break in time, and that the Kidnapping ... did extend into the period of the Robbery, so of course there is overlap in time.
>
> The State would characterize this instruction as unfair and prejudicial to the State.
>
> THE COURT: Well, it is being refused over objection by the defendant.

4/21/93 Tr. at 22–24.

On April 21, 1993, the jury convicted Hoey of both robbery in the first degree and kid-napping. On June 4, 1993, the trial court sentenced Hoey to two concurrent twenty year terms of incarceration.[11] The present timely appeal followed.

## II. DISCUSSION

### A. The Trial Court Erred In Denying Hoey's Motion To Dismiss Charges For Violation Of HRPP 48.

■ As we have noted, Hoey's first claim on appeal is that the trial court erroneously denied his motion to dismiss for a violation of HRPP 48. When reviewing the denial of an HRPP 48 motion to dismiss, we apply both the "clearly erroneous" and "right/wrong" tests.

> A trial court's [FOFs] in deciding an HRPP 48(b) motion to dismiss are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed. However, whether these facts fall within one of [HRPP] 48(b)'s exclusionary provisions is a question of law, the determination of which is freely reviewable pursuant to the "right/wrong" test.

*State v. Hutch*, 75 Haw. 307, 328–29, 861 P.2d 11, 22 (1993) (citations and internal quotation marks omitted).

We note at the outset that HRPP 48(b)(1) requires criminal charges "to be dismissed if a trial on those charges does not commence within six months [*i.e.*, one hundred eighty days] from the time of the arrest or of filing of the charges, whichever is sooner." *State v. Ikezawa*, 75 Haw. 210, 214, 857 P.2d 593, 595 (1993). Pursuant to HRPP 48(c), certain periods must be excluded from the computation of the six months period, including delays resulting from (1) "collateral" proceedings concerning the defendant, (2) the absence or unavailability of the defendant, and (3) good cause.[12]

Hoey maintains that the trial court erred in excluding a total of forty-eight days from the three hundred thirty-four day period

---

11. *See supra* notes 3 and 4.

12. *See supra* notes 1 and 5.

from his date of arrest to the commencement of trial: (1) the thirty-six day period that elapsed between the filing of his motion for supervised release and/or bail reduction and the circuit court's decision on the motion (COL 2); (2) the four day period during which his counsel attended a public defenders' retreat and seminar (COL 1); and (3) the eight day period during which his counsel was in trial in *Tabios* (COL 4). If Hoey is correct, then the time period from his arrest to the commencement of trial not properly excluded pursuant to HRPP 48(c) exceeded the one hundred eighty day limit imposed by HRPP 48(b), and the trial court erred in denying his HRPP 48 motion to dismiss. For the reasons set forth below, we agree with Hoey.

■ HRPP 48 is intended not only "to ensure speedy trial for criminal defendants," *State v. Coyaso*, 73 Haw. 352, 355, 833 P.2d 66, 68 (1992), but also "to relieve congestion in the trial court, to promptly process all cases reaching the courts[,] and to advance the efficiency of the criminal justice process." *State v. Estencion*, 63 Haw. 264, 268, 625 P.2d 1040, 1043 (1981). Consistent with these purposes, the language of HRPP 48(c) contemplates only those periods of time that postpone trial. Accordingly, each excludable category enumerated in HRPP 48(c), with one exception not material to the present analysis, is modified by the introductory phrase *"periods of delay* resulting from." (Emphasis added.) As the drafters of the modern version of HRPP 48 noted, "[t]he proposed rule crystallizes the concept embodied in the present rule by explicitly stating the timetables to follow and *causes which will be recognized as justifying delays*." Note to Rule 48, contained in *Commentary to Proposed Hawai'i Rules of Penal Procedure* 233 (1975) (emphasis added).[13] Therefore, to be excludable under HRPP 48(c), a time period must actually delay a defendant's trial.

1. *The trial court erred in excluding the thirty-six day period from the filing of Hoey's motion for supervised release and/or bail reduction to the date of hearing.*

Hoey contends that the trial court erred in excluding the thirty-six days that elapsed between the filing and resolution of his motion for supervised release and/or bail reduction because, by its very nature, the motion

> did not cause a delay in the commencement of his trial since the trial could have proceeded without resolution of this motion.
>
> ... [A bail motion] is not dispositive of any substantive issues concerning the trial, such as a motion to suppress or dismiss....
>
> ....
>
> It would not further the purpose of [HRPP] 48 to exclude periods for bail motions which have no bearing on the trial date since this would not be a rational, sensible[,] and practical interpretation of [HRPP] 48(c)(1).

Opening Brief at 21–23.

On the other hand, citing *State v. Soto*, 63 Haw. 317, 627 P.2d 279 (1981), and *State v. Ho*, 7 Haw.App. 516, 782 P.2d 29 (1989), the prosecution counters that the appellate courts in this jurisdiction "have ... recognized that such time is excludable." Answering Brief at 16.

While technically accurate, the prosecution's argument is misleading. Although both the *Soto* and *Ho* courts appear to have assumed, *arguendo*, that motions for supervised release and/or bail reduction were excludable under HRPP 48(c)(1), *see Soto*, 63 Haw. at 318–20, 627 P.2d at 280–81; *Ho*, 7 Haw.App. at 517, 782 P.2d at 30, Hoey is correct in his assertion that neither decision proffered any explanation "as to how the bail

---

13. The same view is reflected in the case law of other jurisdictions that have promulgated rules similar to HRPP 48. *See, e.g., Hendricks v. State*, 555 N.E.2d 178, 179 (Ind.App.1990) ("[T]he State must show actual delay caused by the defendant's act before [a] time period can be charged against him."); *Commonwealth v. Mor-* gan, 484 Pa. 117, 121–22, 398 A.2d 972, 974 (1979) ("delay" cognizable under rule only where it causes commencement of trial to be postponed for some period of time beyond time it would have been scheduled absent "delay" in question).

motions filed in those cases delayed the commencement of trial." Opening brief at 22.

In fact, both *Soto* and *Ho* highlighted the centrality of actual delay as an element of the excludability of time pursuant to HRPP 48(c). The specific holding in *Soto* was that "in computing the time within which the trial of [the] defendant must commence, *any delay resulting from any pretrial motion concerning the defendant shall be excluded* from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 63 Haw. at 320, 627 P.2d at 281 (emphasis added). And the *Ho* court expressly refused to exclude the one day occasioned by the defendant's HRPP 48 motion precisely because, as in the present case, "*the motion* was made and decided on the first day of trial and *caused no delay* [.]" 7 Haw.App. at 517 n. 5, 782 P.2d at 30 n. 5 (emphasis added). In our view, the general insistence on actual delay expressed in *Soto* and *Ho* is consistent with "a rational, sensible[,] and practical interpretation" of HRPP 48 that "will permit accomplishment of the purpose of the rule," in contrast to "one which is unreasonable or impracticable, or that would hinder or retard the accomplishment of that purpose." *Soto*, 63 Haw. at 320, 627 P.2d at 281 (citation omitted).

■ Some pretrial motions are substantive or outcome-determinative; the issues raised therein must be decided before trial may commence. Substantive motions, by their very nature, delay trial and, as a *per se* matter, are excludable under HRPP 48(c)(1). For example, in *State v. Sujohn*, 64 Haw. 516, 644 P.2d 1326, *reconsideration denied*, 64 Haw. 688, 644 P.2d 1326 (1982), we held that the trial court should have excluded the period of time that a motion to suppress identification was pending because it "was a motion which would have to be disposed of before trial and thus, *would delay trial while it was pending.*" *Id.* at 520, 644 P.2d at 1329 (emphasis added). And in *State v. Nihipali*, 64 Haw. 65, 637 P.2d 407 (1981), we approved the excludability of time periods attributable to the pendency of defense motions to sever

codefendants' trials and suppress evidence on the ground that they were responsible for trial delay.

By contrast, a motion for supervised release and/or bail reduction does not address substantive issues that affect the timing of trial. The motion may be filed or heard at any time—before, during, or even after trial. Thus, excluding time periods attributable to the pendency of such motions for purposes of the HRPP 48 computation would not advance the underlying policies of prompt processing of cases and maximizing the efficiency of the criminal justice system. *See Estencion, supra.* As the Alaska Supreme Court noted in *James v. State,* 567 P.2d 298, 300 n. 4 (Alaska 1977), "motions for modification of bail ... have no direct bearing on the trial date and should not be excluded in computing the time involved."

■ Because motions for supervised release and/or bail reduction in no way delay the commencement of criminal trials, we hold that time periods attributable to such motions are not excludable pursuant to HRPP 48(c).[14] Accordingly, we hold that the trial court erred in excluding from its HRPP 48(b) calculation the thirty-six day period that elapsed between the filing of Hoey's motion for supervised release and/or bail reduction and its disposition.

2. *Because defense counsel's unavailability could not have resulted in any actual delay of Hoey's trial, the trial court erred in excluding the twelve days during which defense counsel attended a public defenders' retreat and seminar and was involved in the Tabios trial.*

As we have indicated, pursuant to HRPP 48(c)(5) (unavailability of the defendant), or, in the alternative, HRPP 48(c)(8) (for good cause shown), the trial court excluded (1) the four days during which Hoey's defense counsel was attending a public defenders' retreat and seminar in May 1992, and (2) the eight days during which his counsel was involved in the *Tabios* trial in August 1992. Hoey

14. To the extent that *Soto* and *Ho, supra,* or any other appellate decision in this jurisdiction, imply the contrary, they are overruled.

alleges, inter alia, that the trial court erred in so doing because the periods in question did not cause actual delay. Opening Brief at 27–29. We agree.

█ The record reflects that the public defenders' retreat and seminar was conducted between May 26 and May 29, 1992, less than ten days after Hoey's arrest. Hoey was not arraigned in circuit court until June 18, 1992, and it was only then that the present matter was given its initial trial setting of the week of September 8, 1992. Thus, the record fails to provide any possible support for an inference that the retreat and seminar could delay a trial that had yet to be scheduled in the first instance. Because the retreat and seminar did not, and could not, cause an actual delay in the commencement of Hoey's trial, we hold that the four day period in question should not have been excluded.

█ In the same vein, Hoey's defense counsel was involved in the *Tabios* trial from August 6 through August 13, 1992, well in advance of Hoey's scheduled trial week of September 8, 1992. Nothing in the record suggests that Hoey's trial date was continued due to defense counsel's participation in *Tabios*. To the contrary, the minutes of a pretrial conference conducted in the present matter on August 14, 1992—the day after *Tabios* concluded—give no indication that the completed *Tabios* trial, or anything else, necessitated a delay of Hoey's trial. By contrast, on October 5, 1992, almost a month after Hoey's trial date had inexplicably come and gone, the minutes of a trial status conference in the present matter reflect that Hoey's trial date was placed on "float" status and returned to "master calendar" because of defense counsel's obligation to commence trial the next day in *Kaikala*. Moreover, on October 23, 1992, the administrative judge of

the criminal division granted Hoey's motion to continue trial week in order to facilitate a mental evaluation, and the case was pulled from the master calendar. Presumably, if *Tabios* had delayed Hoey's trial, the circuit court, as it did with respect to *Kaikala*, would have taken some action to change the status of the matter on the trial calendar, and there would have been no need to seek the later continuance. Thus, there is no evidence in the record that *Tabios* in any way delayed the commencement of Hoey's trial, and we hold that the trial court erred in excluding the eight days of defense counsel's involvement in it.[15]

### 3. *Summary*

█ In conclusion, the trial court erred in denying Hoey's motion to dismiss charges for violation of HRPP 48. The court erred in excluding (1) the thirty-six days that elapsed during the pendency of Hoey's motion for supervised release and/or bail reduction (COL 2), (2) the four days during which defense counsel attended the public defenders' retreat and seminar in May 1992 (COL 1), and (3) the eight days during which defense counsel was engaged in trying *Tabios* in August 1992 (COL 4). We also hold, *sua sponte*, that the trial court erred in separately excluding the three days—November 23 through November 25, 1992—during which the circuit court judges were attending a judicial conference (FOF 8 and COL 6) because this period was subsumed within the one hundred eleven day period that the trial court had already excluded by virtue of the pendency of Hoey's motion for mental evaluation and judicial determination of fitness to proceed (FOF 5 and COL 3). Obviously, a given time period can only be excluded once pursuant to HRPP 48(c).

█ Accordingly, three hundred thirty-four days elapsed from the date of Hoey's

---

15. Hoey also urges that HRPP 48(c)(5) is not a proper basis for excluding periods when a defendant's attorney is unavailable (*i.e.*, that unavailability of a defendant's counsel is not the functional equivalent of a defendant's own unavailability). Hoey is correct. *See State v. Jackson*, 8 Haw.App. 624, 630, 817 P.2d 130, 134–35 (1991) (defendant considered "unavailable" whenever whereabouts known but trial presence cannot be obtained or defendant resists being returned to state for trial or trial presence cannot be obtained by due diligence). In short, HRPP 48(c)(5) addresses unavailability of the defendant and not the attorney. The subsection properly addressing the problem of unavailability of counsel is HRPP 48(c)(8). *See State v. Senteno*, 69 Haw. 363, 368–69, 742 P.2d 369, 373 (1987) (period when defendant has no attorney excludable for "good cause," pursuant to HRPP 48(c)(8)).

arrest to the date of trial (FOFs 1 and 2 and COL 8), and the following periods are properly excludable:

| Motion for mental evaluation and judicial determination of fitness to proceed: | 111 days |
|---|---|
| State v. Kaikala trial: | 4 days |
| Continuance agreed to by defendant: | 28 days |
| Total Excludable: | 143 days |

A total of one hundred ninety-one nonexcludable days (334 − 143) elapsed between Hoey's arrest and the commencement of his trial, a clear violation of the one hundred eighty day limit mandated by HRPP 48(b).

**B.** *The Trial Court Erred In Denying That Portion Of Hoey's Motion In Limine Seeking To Suppress His Statement To Detective Nobriga.*

Hoey alleges as his second point on appeal that the trial court "erred ... in failing to exclude [his] confession at trial[,] where the *Miranda* warnings were defective, where [he] had not voluntarily, knowingly, and intelligently waived his right to counsel, and where [he had] asserted his right to counsel." Opening brief at 13. Although Hoey proffers multiple arguments, it is only necessary for us to address his outcome-dispositive suggestion that his "response 'I don't have the money to buy one[,]' when asked by [Detective Nobriga] if he needed an attorney[,] was an assertion of his right to counsel which required that further questioning cease[,] or[,] at the very minimum, clarification before any further substantive questioning was resumed[.]" *Id.* at 30.

### 1. *Standard of review*

In the past, we have applied a "clearly erroneous" standard of review to the FOFs made by the court in connection with a voluntariness hearing or a motion to suppress, on which a decision to admit a confession into evidence at trial is based, pursuant to the rationale that the questions

> [w]hether the defendant invoked his right to counsel and whether he waived the right are primarily questions of fact. Thus, we would not disturb the trial court's determination of these questions unless, after a review of the whole record, we are left

with the definite and firm conviction that a mistake has been committed.

*State v. Villeza,* 72 Haw. 327, 330–31, 817 P.2d 1054, 1056, *reconsideration denied,* 72 Haw. 617, 841 P.2d 1074 (1991) (citations and internal quotation marks omitted) (brackets in original).

We have also recognized that "in a ... technical sense, waiver is a question that requires application of constitutional principles to the facts as found." *Id.* at 331, 817 P.2d at 1056 (citation and internal quotation marks omitted). Accomplishment of this task "requires us to examine *the entire record* and make an *independent determination* of the ultimate issue of voluntariness based upon that review and the *totality of circumstances* surrounding [the defendant's] statement." *State v. Kelekolio,* 74 Haw. 479, 502, 849 P.2d 58, 69 (1993) (citations and internal quotation marks omitted) (brackets in original and emphasis added); *see also Villeza,* 72 Haw. at 331, 817 P.2d at 1056 (citing *State v. Kaahanui,* 69 Haw. 473, 747 P.2d 1276 (1987), and *Davis v. North Carolina,* 384 U.S. 737, 741, 86 S.Ct. 1761, 1764, 16 L.Ed.2d 895 (1966)). Thus, we apply a *de novo* standard of appellate review to "the ultimate issue [of the] voluntariness" of a confession.

### 2. *General principles*

Under the fifth amendment to the United States Constitution and article 1, section 10 of the [Hawai'i] Constitution, "[n]o person shall ... be compelled in any criminal case to be a witness against" himself or herself. *State v. Pau'u,* 72 Haw. 505, 509, 824 P.2d 833, 835 (1992). When a confession or inculpatory statement is obtained in violation of either of these provisions, the prosecution will not be permitted to use it to secure a defendant's criminal conviction. *Id.* (citing *State v. Russo,* 67 Haw. 126, 681 P.2d 553 (1984)).

*Kelekolio,* 74 Haw. at 501–02, 849 P.2d at 69.

The privilege against self-incrimination is " 'fundamental to our system of constitutional rule.' " *State v. Nelson,* 69 Haw. 461, 466, 748 P.2d 365, 368 (1987) (quoting *Miranda v. Arizona,* 384 U.S. 436, 468, 86 S.Ct. 1602, 1624–25, 16 L.Ed.2d 694 (1966)).

Inasmuch as "the privilege is jeopardized 'when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and . . . subjected to questioning, . . . [p]rocedural safeguards must be employed to protect the privilege[ ]' whenever interrogation in a custodial setting occurs." *Id.* (quoting *Miranda*, 384 U.S. at 478–79, 86 S.Ct. at 1629–31) (brackets in original).

*Miranda* imposed upon the prosecution the burden of demonstrating in any given case that these "procedural safeguards" had been employed and described them in relevant part as follows:

> Prior to any [custodial] questioning, the [defendant] must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly[,] and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking[,] there can be no questioning. . . . The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.

384 U.S. at 444–45, 86 S.Ct. at 1612.

■ We noted in *Nelson* that " 'the protections which the United States Supreme Court enumerated in *Miranda* have an independent source in the [Hawai'i] Constitution's privilege against self-incrimination.' " *Nelson*, 69 Haw. at 467, 748 P.2d at 369 (quoting *State v. Santiago*, 53 Haw. 254, 266, 492 P.2d 657, 664 (1971)). In determining

the admissibility of custodial statements, " 'the prosecutor must show that each accused was warned that he had a right to remain silent, that anything said could be used against him, that he had a right to the presence of an attorney, and that if he could not afford an attorney one would be appointed for him.' " *Id.* (quoting *Santiago*, 53 Haw. at 266, 492 P.2d at 664). If these minimal safeguards are not satisfied, then " 'statements made by the accused may not be used either as direct evidence . . . or to impeach the defendant's credibility[.]' " *Id.* 69 Haw. at 467–68, 748 P.2d at 369 (quoting *Santiago*, 53 Haw. at 266, 492 P.2d at 664).[16]

■ Assuming, however, that the minimal safeguards are observed, the accused may waive the right to counsel, provided that such waiver "is voluntarily and intelligently undertaken." *Id.* 69 Haw. at 468 n. 3, 748 P.2d at 369 n. 3 (citation and internal quotation marks omitted). Nevertheless, we emphasize that waiver of the right to counsel during police interrogation is not irrevocable; in accordance with the mandate of *Miranda*, the right to counsel may be invoked at any point, and when invoked, all substantive questioning must cease unless and until counsel is provided. *Miranda*, 384 U.S. at 445, 86 S.Ct. at 1612–13.

3. *There was ambiguity as to whether Hoey invoked the right to counsel when he stated that he did not "have the money to buy" legal representation, which Detective Nobriga failed to clarify; accordingly, Hoey did not voluntarily, knowingly, and intelligently waive the right to counsel during interrogation.*

Hoey alleges that, in the context of his colloquy with Detective Nobriga, *see supra* at 508–509, his statement that he did not have the money to "buy" a lawyer "should have been construed to be a request for counsel as

---

16. As we recognized in *Nelson,* the Hawai'i rule is broader in scope than the federal rule. "In *Harris v. New York*, 401 U.S. 222, [91 S.Ct. 643, 28 L.Ed.2d 1] (1971), the United States Supreme Court, in a five to four decision, held that statements inadmissible under *Miranda* could nevertheless be used to impeach the testimony of a defendant who took the stand." *State v. Santiago*, 53 Haw. at 263, 492 P.2d at 662. But as "the final arbiter of the meaning of the provisions of the [Hawai'i] Constitution[,]" *id.* at 265, 492 P.2d at 664, this court chose not to sanction a conviction possibly premised on evidence "procured [from the defendant] in violation of his constitutional rights[.]" *Id.* at 267, 492 P.2d at 665. *Nelson,* 69 Haw. at 468, 748 P.2d at 369 (brackets in original).

it demonstrated that [he] did not understand his right to court-appointed" legal representation. Opening brief at 30–31. In order to assess Hoey's claim, it is necessary for us to review certain applicable case authority.

██ We begin with the proposition that if a defendant makes an *unequivocal* request for counsel while being "Mirandized," all questioning must terminate until counsel is present. *Miranda,* 384 U.S. at 471–72, 86 S.Ct. at 1626–27. In other words,

> once an accused has expressed his desire to deal with police interrogators only through counsel, he cannot be further questioned until counsel has been made available to him, unless the accused initiates further communication, exchanges, or conversations with the police. *Edwards v. Arizona,* 451 U.S. 477, 484–85 [101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378] ... (1981); *State v. Ikaika,* 67 Haw. 563, 566, 698 P.2d 281, 184 (1985); *State v. Brezee,* 66 Haw. 162, 657 P.2d 1044, 1046 (1983).

> This principle creates a bright-line rule that once the right to counsel has been invoked[,] all questioning must cease. *Smith v. Illinois,* 469 U.S. 91, 98 [105 S.Ct. 490, 494, 83 L.Ed.2d 488] ... (1984) (per curiam). *See also Solem v. Stumes,* 465 U.S. 638, 646 [104 S.Ct. 1338, 1343, 79 L.Ed.2d 579] ... (1984).

*State v. Mailo,* 69 Haw. 51, 53, 731 P.2d 1264, 1266 (1987).

In *Mailo,* the defendant appealed the circuit court's order denying his motion to suppress statements made by him during a custodial interrogation, arguing that his rights to counsel and to remain silent under the fifth and sixth amendments to the United States Constitution and article I, sections 10 and 14 of the Hawai'i Constitution had been violated. The statements were subsequently used at trial to impeach the defendant's testimony. The relevant portions of the tape-recorded and transcribed questions posed by the interrogating police officer and the defendant's responses were as follows:

Q Okay.... I am gonna ask you questions about a Sodomy, Kidnapping which occurred on 6-27-85 at 1164 Maunakea Street. Okay, understand?

A Yeah.

Q You don't have to talk now if you don't want to. You don't have to say anything to me or answer any of my questions. Anything you say may be used against you at your trial. You have the right to counsel of your choice or to talk to anyone else you may want to. You also have the right to an attorney present while I talk to you. You know what an attorney is? Attorney is lawyer. You know what a lawyer is?

A Oh, yeah.

Q Okay? Same thing. If you cannot afford an attorney, the court will appoint one for you. *Do you want an attorney now?*

A *(Inaudible).*

Q *You want a lawyer here while I talk to you?*

A *Yeah.*

Q You want a lawyer now? ... while I talk to you or you don't want a lawyer?

A Nah, 'as all right.

Q You don't want one?

A Uh.

Q Okay....

*Id.* at 52, 731 P.2d at 1265–66 (emphasis in original). We held that the defendant had made an unambiguous request for counsel and that the police should have ceased questioning at that point. *Id.* at 53, 731 P.2d at 1266.

The cases cited above, however, do not reach the issue of a defendant's *equivocal* invocation of *Miranda* rights, and the jurisdictions that have addressed it are split into three camps regarding whether cessation of questioning is required or whether the interrogating police officer may seek to clarify the meaning of a defendant's ambiguous statements. Those in the first camp have held that a defendant's ambiguous expression of interest in the presence of an attorney requires that further questioning cease altogether. *See, e.g., People v. Plyler,* 86 Mich. App. 272, 277, 272 N.W.2d 623, 626 (1978); *State v. Kunkel,* 137 Wis.2d 172, 179, 404 N.W.2d 69, 74, *review denied,* 138 Wis.2d 531, 412 N.W.2d 893, *cert. denied,* 484 U.S.

929, 108 S.Ct. 297, 98 L.Ed.2d 256 (1987); *Micale v. State,* 76 Wis.2d 370, 373, 251 N.W.2d 458, 460 (1977). Those in the second have required *clarifying* questions with regard to the defendant's comprehension or waiver of the right to counsel as a necessary precondition to further *substantive* questioning. *See, e.g., People v. Turnage,* 45 Cal. App.3d 201, 212, 119 Cal.Rptr. 237, 244 (1975); *Martinez v. State,* 564 So.2d 1071, 1073 (Fla.1990); *Commonwealth v. Waggoner,* 373 Pa.Super. 23, 36–37, 540 A.2d 280, 287–89, *appeal denied,* 520 Pa. 616, 554 A.2d 509 (1988), *cert. denied,* 490 U.S. 1031, 109 S.Ct. 1769, 104 L.Ed.2d 204 (1989). Those in the third have found an effective waiver despite an ambiguous assertion of the right to counsel. *See, e.g., Golden v. State,* 439 So.2d 813, 814–15 (Ala.Crim.App.1983); *Lara v. State,* 740 S.W.2d 823, 831–32 (Tex.Ct.App. 1987), *cert. denied,* 493 U.S. 827, 110 S.Ct. 92, 107 L.Ed.2d 57 (1989).

For purposes of construing the application of the principles announced in *Miranda* and *Edwards* to a defendant's equivocal invocation of the right to counsel in the course of custodial interrogation, the United States Supreme Court recently and qualifiedly sided with the third camp in *Davis v. United States,* ⸺ U.S. ⸺, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), in which a five member majority held as follows:

> If the suspect effectively waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him. But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation. *Edwards v. Arizona, supra,* 451 U.S. at 484–485 [101 S.Ct. at 1884–85].... This second layer of prophylaxis for the *Miranda* right to counsel is designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights. To that end, we have held that a suspect who has invoked the right to counsel cannot be questioned regarding any offense unless an attorney is actually present....

> ... Invocation of the *Miranda* right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning.

> Rather, the suspect must unambiguously request counsel. As we have observed, a statement either is such an assertion of the right to counsel or it is not. Although a suspect need not "speak with the discrimination of an Oxford don," *post,* [⸺ U.S. at ⸺, 114 S.Ct.] at 2364 (SOUTER, J., concurring in judgment), he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the officers stop questioning the suspect.

> We decline petitioner's invitation to extend *Edwards* and require law enforcement officers to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney....

> · · · ·

> Of course, when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney. That was the procedure followed by the [law enforcement officers] in this case. Clarifying questions help protect the rights of the suspect by ensuring that he gets an attorney if he wants one, and will minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement regarding counsel. But we decline to adopt a rule requiring officers to ask clarifying questions. If the suspect's statement is not an unambiguous or unequivocal

request for counsel, the officers have no obligation to stop questioning him.

To recapitulate: We held in *Miranda* that a suspect is entitled to the assistance of counsel during custodial interrogation even though the Constitution does not provide for such assistance. We held in *Edwards* that if the suspect invokes the right to counsel at any time, the police must immediately cease questioning him until an attorney is present. But we are unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect might want a lawyer. Unless the suspect actually requests an attorney, questioning may continue.

—— U.S. at ——– ——, 114 S.Ct. at 2354–57 (citations and internal quotation marks omitted).

■ This court "has always been mindful of its obligation to 'afford defendants the minimum protection required by federal interpretations of the ... Federal Constitution....'" *Hutch,* 75 Haw. at 321, 861 P.2d at 19 (quoting *State v. Texeira,* 50 Haw. 138, 142 n. 2, 433 P.2d 593, 597 n. 2 (1967)). By the same token, as the ultimate judicial tribunal with final, unreviewable authority to interpret and enforce the Hawai'i Constitution, we are free to give broader protection under the Hawai'i Constitution than that given by the federal constitution. *Id.* 75 Haw. at 322, 861 P.2d at 19 (citations omitted).

■ On the issue before us, we choose to afford our citizens broader protection under article I, section 10 of the Hawai'i Constitution than that recognized by the *Davis* majority under the United States Constitution by aligning ourselves with the jurisdictions in the "second camp" described above. *See supra* at 521. Accordingly, we hold that (1) when a suspect makes an ambiguous or equivocal request for counsel during custodial interrogation, the police must either cease all questioning or seek non-substantive clarification of the suspect's request, and (2) if, upon clarification, the defendant unambiguously and unequivocally invokes the right to counsel, all substantive questioning must

cease until counsel is present. Conversely, we hold that if, upon clarification, the defendant voluntarily, knowingly, and intelligently waives the presence of counsel, substantive questioning may continue.

In reaching our holding, we adopt the reasoning of Justice Souter [17] set forth in his concurring opinion in *Davis:*

> While the question we address today is an open one, its answer requires coherence with nearly three decades of case law addressing the relationship between police and criminal suspects in custodial interrogation. Throughout that period, two precepts have commanded broad assent: that the *Miranda* safeguards exist to assure that *the individual's right to choose* between speech and silence remains unfettered throughout the interrogation process, and that the justification for *Miranda* rules, intended to operate in the real world, must be consistent with practical realities. A rule barring government agents from further interrogation until they determine whether a suspect's ambiguous statement was meant as a request for counsel fulfills both ambitions. It assures that a suspect's choice whether or not to deal with police through counsel will be scrupulously honored, and it faces both the real-world reasons why misunderstandings arise between suspect and interrogator and the real-world limitations on the capacity of police and trial courts to apply fine distinctions and intricate rules.

*Davis,* —— U.S. at ——– ——, 114 S.Ct. at 2359–60 (Souter, J., concurring) (citations and internal quotations omitted) (emphasis in original).

We also view as persuasive the reasoning of *Waggoner, supra,* in which the defendant contended that he had invoked his right to counsel by stating, "I can't afford a lawyer," during the *Miranda* colloquy with the interrogating police officer. The court agreed, ruling that when

> Waggoner was given his *Miranda* warnings . . ., he stated that he could not afford

---

**17.** Justice Souter's concurring opinion in *Davis* was joined by Justices Blackmun, Stevens, and Ginsburg.

a lawyer. This statement constituted an ambiguous assertion of his right to counsel. The statement was directly at odds with [the interrogating officer's] explanation to Waggoner that if he could not afford a lawyer, he could have one appointed for him free of charge. Considering Waggoner's response, one could easily draw the conclusion that Waggoner had failed to understand that he could have a free lawyer appointed for him. Moreover, Waggoner's statement would seem to indicate that if he could have afforded a lawyer, he would have wanted one present. Waggoner's ambiguous response prevents one from stating with unswerving confidence that he fully understood he had the right to have a lawyer appointed for him at no cost and that he waived that right.

[The interrogating police officer] responded to Waggoner's inconsistent reply by continuing with the *Miranda* colloquy. . . . [The interrogating officer] never attempted to clarify whether Waggoner had understood his right to have counsel free of charge. The fact that Waggoner ultimately decided that he might answer [the officer's] questions . . . did not obviate the need to establish that he had understood and waived his right to counsel. In cases such as this, when a defendant's statement regarding his *Miranda* rights is ambiguous and inconsistent with an officer's explanation of those rights, the officer should ask questions to clarify what the defendant meant by his statement or why he made it. Simply ignoring the fact that the statement was made will not suffice. A defendant's waiver of his *Miranda* rights is valid only if made voluntarily, knowingly, and intelligently. *Miranda v. Arizona, supra.* In light of the ambiguity in [Waggoner's] statement, we cannot state with a sufficient degree of certainty that he understood and waived his *Miranda* rights. The burden of proving by a preponderance of the evidence that a waiver of a constitutional right was knowing, voluntary, and intelligent rests upon the [prosecution]. Based on the foregoing, we cannot find that the [prosecution] met this burden.

*Waggoner*, 373 Pa.Super. at 39–41, 540 A.2d at 288–89 (citation omitted).

Hoey's statement at issue in the present appeal was admittedly ambiguous. However, when the answer to the question "You think you'll need an attorney now?" is "I don't have the money to buy one," as in *Waggoner*, one could "easily draw the conclusion that [Hoey] had failed to understand that he could have a free lawyer appointed for him" and that "if he could have afforded a lawyer, he would have wanted one present." And, as in *Waggoner*, Detective Nobriga's failure to clarify Hoey's ambiguous statement, which was demonstrably inconsistent with Nobriga's explanation of Hoey's *Miranda* rights, left unresolved the question whether Hoey had waived the right to counsel at his interrogation.

Therefore, having examined the entire record and considered the totality of the circumstances surrounding Hoey's confession, *see Kelekolio, supra*, we hold that the prosecution failed to meet its burden of proving that Hoey voluntarily, knowingly, and intelligently waived his right to counsel at his interrogation, as guaranteed by article I, section 10 of the Hawai'i Constitution. For this reason, we hold that the trial court erred in admitting Hoey's redacted confession into evidence.

C. *The Trial Court Erred In Refusing To Instruct The Jury Regarding The Possible Merger Of The Robbery And Kidnapping Counts.*

Hoey's final point of error on appeal is that the "trial court erred . . . in failing to instruct the jury that in order to find [Hoey] guilty of both robbery and kidnapping, the acts of kidnapping (the restraint) had to extend beyond any restraint necessarily and incidentally committed during the robbery." Opening brief at 17. He alleges, *inter alia*, that kidnapping may merge with robbery pursuant to HRS § 701–109(1)(e) if the kidnapping and robbery arose from the same uninterrupted course of conduct. Reply brief at 4. Thus, Hoey argues that even if Defendant's Supplemental Instruction No. 4, *see supra* at 18, "may have been inartfully worded, the trial court should have corrected

the defective instruction or otherwise incorporated it into its own instructions" and that, therefore, "the trial court failed in its duty[.]" Opening brief at 18. We agree.

"In reviewing jury instructions, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Horswill,* 75 Haw. 152, 155, 857 P.2d 579, 581 (1993) (citing *Kelekolio,* 74 Haw. at 514–15, 849 P.2d at 74).

 It is possible for kidnapping and robbery charges against a defendant to merge, pursuant to HRS § 701–109(1)(e), under circumstances in which (1) there is but one intention, one general impulse, and one plan, (2) the two offenses are part and parcel of a continuing and uninterrupted course of conduct, and (3) the law does not provide that specific periods of conduct constitute separate offenses.[18] *Cf. State v. Schroeder,* 76 Hawai'i 517, 529–30, 880 P.2d 192, 204–05 (Sup.1994) (no merger of kidnapping and robbery offenses where kidnapping extended beyond acts "necessarily and incidentally committed" during robbery); *State v. Ah Choy,* 70 Haw. 618, 623, 780 P.2d 1097, 1101 (1989) (plain error for trial court to fail to instruct jury that defendant could be convicted only of attempted murder if committed concurrently with robbery in first degree); *State v. Hoopii,* 68 Haw. 246, 251, 710 P.2d 1193, 1197 (1985) (no merger of kidnapping and sexual assault offenses where defendant's conduct constituted separate offenses under law); *State v. Correa,* 5 Haw.App. 644, 649, 706 P.2d 1321, 1325 (1985) (no merger of kidnapping and robbery offenses where kidnapping extended beyond acts "necessarily and incidentally committed" during robbery offenses).

Pursuant to HRS § 708–840(1)(b)(i) (1985 & Supp.1992), a robbery consists of a con-tinuing course of conduct in which a defendant, in the course of committing theft, is armed with a dangerous instrument, uses force against the victim, and the defendant's use of force is intended to overcome the victim's physical resistance or physical power of resistance.[19] Such a course of conduct, depending on the state of the record, may or may not encompass the material elements of the form of kidnapping proscribed by HRS § 707–720(1)(c) (Supp.1992), *i.e.,* the intentional or knowing restraint of another person with intent either to facilitate the commission of a felony or flight after the commission of the felony.[20]

 On the record before us, the question whether Hoey's kidnapping offense merged into the robbery pursuant to HRS § 701–109(1)(e) is one of fact that should have been submitted to the jury. *State v. Alston,* 75 Haw. 517, 527–28, 531, 865 P.2d 157, 163–65 (1994).[21] As we have noted, Hoey placed merger squarely in issue by requesting Defendant's Supplemental Instruction No. 4. *See supra* at 18–19. Assuming arguendo, as the prosecution urged during settlement of jury instructions with the trial court, that the instruction was inaccurately, unfairly, or prejudicially worded, *see supra* at 19, the trial court was nevertheless obligated to ensure that a correct merger instruction was submitted to the jury for its guidance.

"[T]he trial court is the *sole source* of all definitions and statements of law applicable to an issue to be resolved by the jury." *State v. Williamson,* 72 Haw. 97, 103, 807 P.2d 593, 596 (1991) (emphasis added). Moreover,

[it] is the *duty of the circuit judge* to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he [or she] shall state to

---

18. *See supra* note 9.

19. *See supra* note 3. Pursuant to HRS § 708–840(1)(b)(ii) (1985), a robbery may also consist of a continuous course of conduct during which a defendant, while in the course of committing theft, is armed with a dangerous instrument and threatens the imminent use of force against the victim with intent to compel acquiescence to the taking of or escaping with the property that is the subject of the theft. Hoey was not, however, charged with this form of robbery.

20. *See supra* note 4.

21. *See supra* notes 9 and 10.

them fully the law applicable to the facts.

*State v. Feliciano*, 62 Haw. 637, 643, 618 P.2d 306, 310 (1980) (quoting *People v. Henry*, 395 Mich. 367, 373–74, 236 N.W.2d 489, 492 (1975)) (emphasis added). And faced with inaccurate or incomplete instructions, "[the] *trial court has a duty to*, with the aid of counsel, either correct the defective instruction or to otherwise *incorporate it into its own instruction.*" *State v. Riveira*, 59 Haw. 148, 155, 577 P.2d 793, 797 (1978) (emphasis added and citations omitted).... In other words, the ultimate responsibility properly to instruct the jury ... [lies] with the circuit court and *not* with trial counsel.

*State v. Kupau*, 76 Hawai'i 387, 879 P.2d 492, 499–500 (Sup.1994) (quoting *Briones v. State*, 74 Haw. 442, 472–73, 848 P.2d 966, 980 (1993) (Levinson, J., concurring)) (emphasis and brackets in original).

 Because, when read and considered as a whole and in the absence of an instruction regarding merger pursuant to HRS § 701–109(1)(e), the instructions submitted to the jury in the present case were prejudicially insufficient, we hold that the trial judge erred in refusing to instruct the jury regarding the possible merger of the robbery and kidnapping counts against Hoey.

### III. *CONCLUSION*

In summary, we hold that the commencement of Hoey's trial was untimely, in violation of HRPP 48, and the trial court therefore erred in denying Hoey's motion to dismiss charges for violation of HRPP 48; we thus vacate the trial court's judgment of conviction and remand the matter to the circuit court for the entry of an order dismissing the complaint. However, because the circuit court has the discretion, on remand, to dismiss the complaint with or without prejudice, and it is therefore possible that Hoey may be recharged and retried, we deem it necessary to reach the remaining points of error on appeal. Accordingly, because Detective Nobriga failed to clarify Hoey's ambiguous and equivocal invocation of the right to counsel at the outset of Hoey's interrogation before commencing substantive

questioning, we further hold that the prosecution failed to meet its burden of proving that Hoey voluntarily, knowingly, and intelligently waived his constitutional right to counsel and that the trial court erred in admitting Hoey's redacted confession into evidence. Finally, because on the record before us the jury instructions were prejudicially insufficient when read as a whole, we hold that the trial court erred when it refused to instruct the jury regarding the possible merger of the robbery and kidnapping counts of the complaint.

Vacated and remanded.